# IN THE COMMONWEALTH COURT OF PENNSYLVANIA

UnitedHealthcare of Pennsylvania, Inc., :
:
        Petitioner :
:
        v. : No. 1978 C.D. 2016
: Argued: September 11, 2017
Department of Human Services, :
:
        Respondent :


BEFORE:   HONORABLE RENÉE COHN JUBELIRER, Judge
              HONORABLE JOSEPH M. COSGROVE, Judge
              HONORABLE JAMES GARDNER COLINS, Senior Judge


**OPINION BY**
**SENIOR JUDGE COLINS**                           **FILED:  October 4, 2017**

        UnitedHealthcare of Pennsylvania, Inc. (UnitedHealthcare), in this petition for review, appeals a final determination of the Department of Human Services (Department) under Section 1711.1 of the Commonwealth Procurement Code (Procurement Code), 62 Pa. C.S. § 1711.1, that denied UnitedHealthcare's bid protest challenging the Department's selection of offerors for the Department's Community HealthChoices (CHC) Program. For the reasons set forth below, we affirm.

        On March 1, 2016, the Department issued Request for Proposals No. 12-15 (the RFP) to obtain competitive sealed proposals from managed care organizations (MCOs) to implement CHC, a managed care program to provide integrated physical health and long-term services and supports for older Pennsylvanians and adults with physical disabilities. (Record Item (R. Item) 13,

Final Determination ¶¶6-8; R. Item 9 Ex. 1, RFP at 1, 42, Reproduced Record (R.R.) at 157a, 198a.) The RFP divided the Commonwealth into five geographic zones – the Southwest, Southeast, Lehigh/Capital, Northwest and Northeast zones – and invited MCOs to submit proposals for one or more of those five zones. (R. Item 13, Final Determination ¶7; R. Item 9 Ex. 1, RFP at 2-5, 7, 14, R.R. at 158a-161a, 163a, 170a.) The RFP stated that the Department anticipated awarding CHC agreements to no fewer than two and no more than five offerors for each zone. (R. Item 9 Ex. 1, RFP at 5, R.R. at 161a.)

The RFP required that the proposals contain a Technical Submittal, which was weighted as 80% of the total points in scoring the proposals, and a Small Diverse Business (SDB) Submittal, weighted at 20%, and offerors could receive up to 3% in bonus points for committing to Domestic Workforce Utilization. (R. Item 9 Ex. 1, RFP at 14, 38-40, R.R. at 170a, 194a-196a.) To be considered a responsible offeror eligible for selection, an offeror was required to earn at least 70% of the available Technical Submittal points. (*Id.* at 40, R.R. at 196a.)

The RFP provided that the evaluation of the Technical Submittal would be based on four criteria: soundness of approach, financial condition, personnel qualifications, and prior experience. (R. Item 9 Ex. 1, RFP at 38, R.R. at 194a.) The RFP required offerors to submit their three most recent completed years of Healthcare Effectiveness Data and Information Set (HEDIS) rates in their Technical Submittal. (*Id.* at 25-26, R.R. at 181a-182a.) The RFP provided that if the offeror operated a Pennsylvania Health Maintenance Organization (HMO), it was required to submit Pennsylvania HEDIS rates and that offerors that did not operate a Pennsylvania HMO must provide the three most recent years of HEDIS rates for an HMO that they operate in another state. (*Id.*) The fact that Pennsylvania offerors

were required to submit Pennsylvania HEDIS rates and non-Pennsylvania offerors were to submit HEDIS rates for one state in which they operate an HMO was further confirmed on March 24, 2016 and April 5, 2016, by addenda in response to questions from offerors. (R. Item 9 Ex. 4, Addendum No. 3, R.R. at 224a, 226a; R. Item 9 Ex. 6, Addendum No. 5, R.R. at 239a, 241a-244a.) The RFP provided that the Technical Submittal would be evaluated by a committee selected by the Department and that the SDB scoring would be done by the Bureau of Diversity, Inclusion, and Small Business Opportunities (BDISBO) of the Department of General Services (DGS). (R. Item 9 Ex. 1, RFP at 8-9, 38, R.R. at 164a-165a, 194a.)

The deadline for submission of proposals was May 2, 2016. (R. Item 9 Ex. 5, Selection Memorandum, R.R. at 230a.) The Department received proposals for one or more zones from a total of fourteen MCOs, consisting of eight proposals for the Southwest zone, fourteen proposals for the Southeast zone, twelve proposals for the Lehigh/Capital zone, nine proposals for the Northwest zone, and nine proposals for the Northeast zone. (R. Item 13, Final Determination ¶18; R. Item 9 Ex. 5, Selection Memorandum, R.R. at 230a-231a.) UnitedHealthcare did not file any protest with respect to the terms of the RFP and timely submitted proposals for all five zones. (R. Item 13, Final Determination ¶19; R. Item 9 Ex. 5, Selection Memorandum, R.R. at 232a-235a.) Following evaluation and scoring of the proposals, the Department selected Pennsylvania Health & Wellness, Inc. (PHW), Vista Health Plan, Inc. (Vista),[1] and UPMC For You, Inc. (UPMC) for contract negotiations for all five zones because their proposals achieved the three highest

---

[1] Vista is also referred to in the record as AmeriHealth Caritas. (*See*, *e.g.*, R. Item 9 Ex. 5, Selection Memorandum, R.R. at 232a-235a; R. Item 13, Final Determination ¶20.)

3

overall scores for each zone. (R. Item 13, Final Determination ¶20; R. Item 9 Ex. 5, Selection Memorandum, R.R. at 232a-237a.)

PHW, Vista, UPMC, and UnitedHealthcare all satisfied the 70% threshold on their Technical Submittals in all zones. (R. Item 9 Ex. 5, Selection Memorandum, R.R. at 232a-235a.)[2] UnitedHealthcare's proposal was ranked fourth overall in all five zones. (*Id.*) United Healthcare's technical score was fourth highest in all five zones, below the technical scores of the three selected offerors. (*Id.*) United Healthcare's SDB score was fourth highest in three zones and sixth highest in two zones, below the SDB scores of selected offerors PHW and Vista in all zones and the SDB scores of nonselected offerors with lower overall scores. (*Id.*) PHW, Vista, UPMC, and UnitedHealthcare all received the Domestic Workforce Utilization 3% bonus points in all zones. (*Id.*)

On August 30, 2016, the Department notified UnitedHealthcare that PHW, Vista, and UPMC had been selected for all five zones and that UnitedHealthcare was not selected for any zone. (R. Item 13, Final Determination ¶21; R. Item 1, Protest Ex. B, R.R. at 32a.) On September 15, 2016, the Department conducted a debriefing meeting with UnitedHealthcare at which it provided information to UnitedHealthcare concerning the strengths and weaknesses of its proposal and advised UnitedHealthcare that its proposal was ranked fourth in all zones. (R. Item 13, Final Determination ¶¶22, 24-26; R. Item 1, Protest at 3 & Ex. I, R.R. at 7a, 47a-52a.)

On September 22, 2016, more than seven days after it was notified that it was not selected, but within seven days of the debriefing, UnitedHealthcare filed

---

[2] Eight of the other ten offerors also satisfied the 70% Technical Submittal score requirement; only two of the fourteen offerors, one in the Southeast zone and one in all zones, failed to meet that threshold and were not considered eligible. (R. Item 9 Ex. 5, Selection Memorandum, R.R. at 231a-235a.)

4

a bid protest seeking an order selecting UnitedHealthcare for all five zones or, in the alternative, the setting aside of the selection of PHW, Vista, and UPMC and issuance of a new solicitation of proposals. (R. Item 1, Protest at 17, R.R. at 21a.) UnitedHealthcare asserted five substantive grounds for this protest: a claim that the Department's weighting of HEDIS rates in its evaluation of the proposals was unfair because UnitedHealthcare was required to submit its Pennsylvania HEDIS rates while PHW, which had no existing Pennsylvania HMO, was permitted to choose which state HEDIS rates to submit; a claim that delegation of the SDB scoring of the proposals to DGS and BDISBO was improper; and three claims concerning the qualifications of the three selected offerors. (*Id.* at 4-12, R.R. at 8a-16a.) UnitedHealthcare also asserted that it was entitled to documents that it had sought in a Right-to-Know Law (RTKL)[3] request, including other offerors' proposals and documents from the evaluation and scoring of the proposals, asserted that the lack of information and documents violated its due process rights, and requested an evidentiary hearing on the protest. (*Id.* at 12-16 & Ex. D, R.R. at 16a-20a, 34a-36a.)

On September 30, 2016, UnitedHealthcare filed a Supplemental Protest. In this filing, UnitedHealthcare did not raise any new claims of error in the Department's evaluation of the proposals, but asserted that the Department had treated UnitedHealthcare unequally in the documents and information provided in the debriefing and response to protests and reiterated its request for an evidentiary hearing. (R. Item 3, Supplemental Protest, R.R. at 57a-60a.)

On November 28, 2016, the Director of the Department's Bureau of Administrative Services (Director) issued a final determination denying UnitedHealthcare's protest. The Director ruled that UnitedHealthcare did not have

---

[3] Act of February 14, 2008, P.L. 6, 65 P.S. §§ 67.101-67.3104.

a right to the documents it requested under the Procurement Code and rejected its request for a hearing. (R. Item 13, Final Determination at 22-24.) The Director held that the standard applicable to his review of the protest was whether the Department's selection of offerors was "clearly erroneous, arbitrary, capricious or contrary to law." (*Id.* at 7.) The Director ruled that the specific protest grounds asserted by UnitedHealthcare, including its HEDIS and SDB claims, were barred as untimely, and further concluded that even if timely, they were without merit. (*Id.* at 9-19.) UnitedHealthcare timely appealed this final determination to this Court.[4]

In this appeal, UnitedHealthcare argues that the denial of the requested documents and hearing violated its due process rights and rights under the Procurement Code, that the Director applied an incorrect standard of review in considering its bid protest, and that the Director erred in rejecting its HEDIS and SDB protest grounds.[5] We conclude that none of these arguments has merit.

---

[4] This Court hears Procurement Code protest appeals without a jury, on the record certified by the agency, and must affirm the determination of the agency unless the determination is arbitrary and capricious, an abuse of discretion, or contrary to law. 62 Pa. C.S. § 1711.1(i); *Bureau Veritas North America, Inc. v. Department of Transportation*, 127 A.3d 871, 876 n.1 (Pa. Cmwlth. 2015).

[5] UnitedHealthcare did not argue in its briefs that the Director erred in rejecting any of the three other substantive grounds that it asserted in its protest, concerning the qualifications of the selected offerors. Any claim of error in the rejection of UnitedHealthcare's substantive protest grounds other than its HEDIS and SDB claims is therefore waived. *In re Tax Claim Bureau of Lehigh County 2012 Judicial Tax Sale*, 107 A.3d 853, 857 n.5 (Pa. Cmwlth. 2015). UnitedHealthcare has contended in its briefs and at oral argument that the Director's final determination was unsupported because there was no documentary evidence showing whether the Department established its evaluation plan prior to opening the proposals as is required by Section 513(e) of the Procurement Code. UnitedHealthcare, however, did not raise failure to establish an evaluation plan as a protest ground or make any assertion before the Director that the Department did not comply with Section 513(e). This issue is therefore waived and is not before the Court in this appeal. 62 Pa. C.S. § 1711.1(g) ("Issues not raised by the protestant before the purchasing agency are deemed waived and may not be raised before the court").

6

Contrary to UnitedHealthcare's contentions, the denial of the documents that it requested and the failure to hold an evidentiary hearing on the protest did not violate its constitutional rights to procedural due process. A disappointed bidder or offeror seeking a government contract has no right to have a contract awarded to it and therefore has no legal interest protected by the due process clause of the Fourteenth Amendment to the United States Constitution or the Pennsylvania Constitution that confers any rights to an adequate protest process. *Premier Comp Solutions, LLC v. Department of General Services*, 949 A.2d 381, 384-85 (Pa. Cmwlth. 2008); *Stanton- Negley Drug Co. v. Department of Public Welfare*, 943 A.2d 377, 384-85 (Pa. Cmwlth. 2008); *Durkee Lumber Co. v. Department of Conservation and Natural Resources*, 903 A.2d 593, 598-99 (Pa. Cmwlth. 2006); *Corizon Health, Inc. v. Department of General Services*, (Pa. Cmwlth. No. 1740 C.D. 2012, filed Jan. 4, 2013), slip op. at 10-11, 2013 WL 3960974 at *5-*6.[6]   A protestant's rights are limited to the procedures provided in the Procurement Code. *Premier Comp Solutions, LLC*, 949 A.2d at 384-85; *Corizon Health, Inc*, slip op. at 10-11, 2013 WL 3960974 at *5-*6.[7]

---

[6] Because they are unreported decisions, *Corizon Health, Inc.* and *Gateway Health Plan, Inc. v. Department of Human Services*, (Pa. Cmwlth., No. 1924 C.D. 2016, filed July 24, 2017), 2017 WL 3122358, and *Computer Aid, Inc. v. Department of Public Welfare*, (Pa. Cmwlth., No. 553 C.D. 2011, filed July 6, 2011), 2011 WL 10843700, discussed below, are not binding precedent, but are considered by the Court for their persuasive value. 210 Pa. Code § 69.414(a).

[7] While denying access to an administrative remedy that the state has chosen to provide can violate due process rights, *see Logan v. Zimmerman Brush Co.*, 455 U.S. 422 (1982) (arbitrarily barring administrative discrimination claim remedy violated due process); *Aetna Better Health of Pennsylvania, Inc. v. Department of Human Services*, (Pa. Cmwlth., No. 351 M.D. 2016, filed July 19, 2016) (Brobson, J.) (unreported single-judge opinion) (granting preliminary injunction where agency refused to allow the disappointed offeror's protest to proceed), there is no such denial here. The Department permitted UnitedHealthcare to file a protest and ruled on that protest. Rather, as is discussed below, what UnitedHealthcare seeks are rights beyond those provided by the Procurement Code.

Nor was there any violation of UnitedHealthcare's rights under the Procurement Code. The Procurement Code does not provide protestants a right to production of documents or other discovery. 62 Pa. C.S. § 1711.1; *JPay, Inc. v. Department of Corrections*, 89 A.3d 756, 762 (Pa. Cmwlth. 2014). Section 1711.1 provides a protestant only the right to submit documents and information that it has in support of its protest, the right to reply to the agency's response to the protest, and the right to review and address "documents and information deemed necessary by the head of the purchasing agency or his designee to render a decision." 62 Pa. C.S. § 1711.1(c)-(e). While a protestant is entitled to review and address documents on which the agency designee bases his ruling on the protest, 62 Pa. C.S. § 1711.1(e); *Integrated Biometric Technology, LLC v. Department of General Services*, 22 A.3d 303, 307-08 (Pa. Cmwlth. 2011), that right is limited to documents on which the agency designee actually relies. *JPay, Inc.*, 89 A.3d at 762 (protestant does not have right to documents referenced in agency's response to the protest unless agency head or designee relies on those documents); *Corizon Health, Inc*, slip op. at 12-14, 2013 WL 3960974 at *6-*7 (protestant was not entitled to documents submitted confidentially by prevailing offeror because designee did not consider them). Here, because the Director did not deem necessary or rely on the documents that UnitedHealthcare sought, it had no right under the Procurement Code to obtain or review those documents.

UnitedHealthcare argues that underlying documents concerning the procurement are necessarily part of the record under Sections 1711.1(e), (h), (i) of the Procurement Code and therefore must be provided to the protestant. This argument is directly contrary to the language of these statutory provisions. Section 1711.1(e) does not provide that the agency head or designee is to review all relevant

8

procurement records, but instead provides that "[t]he head of the purchasing agency or his designee shall review the protest and any response or reply and may request and review such additional documents or information he deems necessary to render a decision." 62 Pa. C.S. § 1711.1(e). Section 1711.1(h) provides that the record on an appeal to this Court "shall consist of the solicitation or award; the contract, if any; the protest; any response or reply; any additional documents or information considered by the head of the purchasing agency or his designee; the hearing transcript and exhibits, if any; and the final determination," and Section 1711.1(i) merely sets forth the standard of review that this Court is to apply in its review of that record. 62 Pa. C.S. § 1711.1(h), (i). Because the documents sought by UnitedHealthcare were not submitted by it or the Department and were not considered by the Director, they are not part of the record under the Procurement Code.[8]

The Procurement Code also does not give protestants a right to a hearing and grants the agency head or designee reviewing the protest discretion to decide whether a hearing should be held. 62 Pa. C.S. § 1711.1(e) ("[t]he head of the purchasing agency or his designee … may, at his sole discretion, conduct a hearing"); *JPay, Inc.*, 89 A.3d at 767; *Durkee Lumber Co.*, 903 A.2d at 597; *Corizon Health, Inc*, slip op. at 11, 2013 WL 3960974 at *6. The Administrative Agency

---

[8] UnitedHealthcare further asserted at oral argument that it was entitled to three of the documents it sought, the successful offerors' proposals, under paragraph 28 of the Director's final determination and Section 106.1 of the Procurement Code. These arguments likewise fail. Paragraph 28 of the final determination and the provision of the Procurement Handbook on which it relied refer to making the successful proposal available upon execution of the contract with the successful offeror, an event that had not occurred at the time the Director denied UnitedHealthcare's protest. (R. Item 13, Final Determination ¶28; *see* Procurement Handbook, Part I, Chapter 6, Section (B)(13)(c), (14)(a), (e).) Section 106.1 of the Procurement Code has no application to this appeal, as it was enacted on November 4, 2016 and did not go into effect until January 3, 2017, after the Director's final determination. *See* 62 Pa. C.S. § 106.1; Act of November 4, 2016, P.L. 1216, §§1, 6.

9

Law does not apply to bid protests and appeals of bid protest determinations. 62 Pa. C.S. § 1711.1(l). Denial of a hearing is not an abuse of discretion where there is no showing that the facts necessary to decide the protest are in dispute. *Durkee Lumber Co.*, 903 A.2d at 597; *Corizon Health, Inc*, slip op. at 11, 2013 WL 3960974 at *6. Although UnitedHealthcare argues that there were disputed facts, the record support that it cites (R. Item 10, Protest Reply at 5-7, R.R. at 284a-286a) concerns claims of lack of evidence supporting factual assertions by the Department, not conflicts between evidence submitted by it and the Department or the successful offerors. The Director's decision not to grant a hearing was therefore neither a denial of any right under the Procurement Code nor was it an abuse of his discretion.

UnitedHealthcare's assertion that the Director applied an incorrect standard of review likewise fails. UnitedHealthcare argues that an agency head is required in ruling on a bid protest to determine whether the challenged procurement decision is the most advantageous to the agency. We do not agree.

UnitedHealthcare's HEDIS and SDB protests were challenges to the evaluation and selection of offerors for negotiation. The Procurement Code provides that the standard of review applicable to such protests is whether the determination was "clearly erroneous, arbitrary, capricious or contrary to law." 62 Pa. C.S. § 561; *CenturyLink Public Communications, Inc. v. Department of Corrections*, 109 A.3d 820, 824 & n.7 (Pa. Cmwlth. 2015); *Global Tel\*Link Corp. v. Department of Corrections*, 109 A.3d 809, 813 & n.8 (Pa. Cmwlth. 2015); *Gateway Health Plan, Inc. v. Department of Human Services*, (Pa. Cmwlth., No. 1924 C.D. 2016, filed July 24, 2017), slip op. at 11-12, 2017 WL 3122358 at *6; *Computer Aid, Inc. v. Department of Public Welfare*, (Pa. Cmwlth., No. 553 C.D. 2011, filed July 6, 2011), slip op. at 12, 2011 WL 10843700 at *6. Section 561 of the Procurement Code

provides that "[t]he determinations required by the following sections are final and conclusive unless they are clearly erroneous, arbitrary, capricious or contrary to law: … Section 513(a) and (g) (relating to competitive sealed proposals)." 62 Pa. C.S. § 561. Section 513(g) of the Procurement Code governs the purchasing agency's evaluation of competitive sealed proposals and selection of offerors for negotiation. 62 Pa. C.S. § 513(g) ("The responsible offeror whose proposal is determined in writing to be the most advantageous to the purchasing agency, taking into consideration price and all evaluation factors, shall be selected for contract negotiation"). The August 2016 selection decision that was the subject of UnitedHealthcare's protest is precisely the type of determination described in Section 513 – it is a determination in writing by the procurement officer, following the recommendation of the evaluation committee, that the proposals submitted by the selected offerors "are the most advantageous to the Commonwealth." (R. Item 9 Ex. 5, Selection Memorandum, R.R. at 237a.)[9]

---

[9] UnitedHealthcare argues that Section 561 only applies to court review of the agency's ruling on the protest, that Section 513(g) governs review of protests, and that applying Section 561 to the agency head's review elevates the judgment of a low-level evaluation committee above the decision-making authority of the Department Secretary. None of these arguments is valid. Section 1711.1(i) of the Procurement Code, not Section 561, addresses the standard of review for court appeals and provides that "[t]he court shall affirm the determination of the purchasing agency unless it finds from the record that the determination is arbitrary and capricious, an abuse of discretion or is contrary to law." 62 Pa. C.S. § 1711.1(i). Section 513(g) refers to the selection of offerors for negotiations and does not address the evaluation of protests. Moreover, the agency ruling on a protest is not necessarily made, and was not made here, by a higher level decision-maker than the agency decision-makers that approved the selection of offerors. The Procurement Code provides that the protest is reviewed and decided by "[t]he head of the purchasing agency or his designee." 62 Pa. C.S. § 1711.1(e), (f) (emphasis added). The protest here was reviewed and decided, not by the Secretary of the Department, but by the Director of the Department's Bureau of Administrative Services. The selection was made by the Deputy Secretary of the Department's Office of Administration and was reviewed and approved by the Executive Deputy Secretary of the Department. (R. Item 9 Ex. 5, Selection Memorandum, R.R. at 237a.) In addition, a protest challenges a procurement decision on specific grounds. 62 Pa. C.S. § 1711.1(c) ("A protest shall state all grounds upon which the protestant asserts the solicitation or award of the contract was

In *Gateway Health Plan, Inc.*, this Court analyzed and rejected the same argument asserted by UnitedHealthcare that the Director was required to exercise a broad standard of review. The Court held, based on Section 561 of the Procurement Code, that the standard of review that the agency head or his designee is to apply in ruling on a protest of a selection of offerors in response to a request for competitive sealed proposals is whether the selection is "clearly erroneous, arbitrary, capricious or contrary to law." Slip op. at 11-12, 2017 WL 3122358 at *6 (quoting 62 Pa. C.S. § 561). We find this Court's opinion in *Gateway Health Plan, Inc.* persuasive and indistinguishable from this case. The Director therefore did not err in limiting his review of UnitedHealthcare's protest to determining whether the Department's selection of offerors was clearly erroneous, arbitrary, capricious or contrary to law.

Finally, the Director correctly held that UnitedHealthcare's HEDIS and SDB protests were time-barred. The Procurement Code sets strict and mandatory time limits for the filing of protests. Section 1711.1(b) of the Procurement Code provides that where, as here, the protestant is a bidder, offeror or prospective contractor, "the protest shall be filed with the head of the purchasing agency within seven days after the aggrieved bidder or offeror or prospective contractor knew or should have known of the facts giving rise to the protest except that in no event may a protest be filed later than seven days after the date the contract was awarded." 62 Pa. C.S. § 1711.1(b) (emphasis added). Section 1711.1(b) further provides:

> If a bidder or offeror, a prospective bidder or offeror or a prospective contractor fails to file a protest or files an untimely protest, the bidder or offeror, the prospective bidder or offeror or the prospective contractor shall be deemed to have waived its

improper"). A claim that a procurement decision has specific flaws does not lend itself to an overall review and consideration of the merits and benefits of all the proposals submitted in response to a request for proposals.

12

right to protest the solicitation or award of the contract in any forum. Untimely filed protests shall be disregarded by the purchasing agency.

*Id.*[10]

A protest filed more than seven days after the disappointed offeror or bidder had notice of the grounds for the protest is thus barred as untimely, even if no contract has yet been awarded, even if the protest was filed within seven days of the agency's selection of bidders or offerors, and even if the protestant did not subjectively understand or appreciate the ground for protest. *Bureau Veritas North America, Inc. v. Department of Transportation*, 127 A.3d 871, 876-78 (Pa. Cmwlth. 2015); *JPay, Inc.*, 89 A.3d at 764-65; *Collinson, Inc. v. Department of Transportation*, 959 A.2d 480, 482-84 (Pa. Cmwlth. 2008); *Cummins v. Department of Transportation*, 877 A.2d 550, 553-55 (Pa. Cmwlth. 2005); *Common Sense Adoption Services v. Department of Public Welfare*, 799 A.2d 225, 231 (Pa. Cmwlth. 2002). The fact that a debriefing later occurs does not delay the seven-day period for filing a protest, if the offeror or bidder had notice of the ground for protest before the debriefing or the debriefing provided no additional information on which the protest is based. *Bureau Veritas North America, Inc.*, 127 A.3d at 877-78.

Where the protest challenges a term or provision of the invitation for bids or request for proposals or the issue that it raises was apparent from the invitation for bids or request for proposals, the offeror or bidder must file that protest no later than seven days after it has notice of that term or provision, despite the fact

---

[10] Although an otherwise untimely protest can be allowed on *nunc pro tunc* grounds where the protestant shows extraordinary circumstances, such as fraud or breakdown in the administrative process, that delayed the filing of the protest document, *Bureau Veritas North America, Inc.*, 127 A.3d at 879-81 (*nunc pro tunc* relief granted where one-day untimeliness was caused by email transmission failure), there is no basis for any claim for *nunc pro tunc* relief here and UnitedHealthcare did not seek *nunc pro tunc* relief or argue that it is entitled to such relief.

13

that no selection or rejection of any bids or proposals has occurred. *CenturyLink Public Communications, Inc.*, 109 A.3d at 829; *JPay, Inc.*, 89 A.3d at 764-65; *Collinson, Inc.*, 959 A.2d at 482-84; *Cummins*, 877 A.2d at 553-55; *Common Sense Adoption Services*, 799 A.2d at 231. If an offeror first raises such a challenge in a protest filed more than seven days after it submits its proposal, that ground of protest is barred as untimely. *CenturyLink Public Communications, Inc.*, 109 A.3d at 827-30; *JPay, Inc.*, 89 A.3d at 764-67; *Common Sense Adoption Services*, 799 A.2d at 231-34. Where the protest is based on additional facts learned less than seven days before the protest is filed and not apparent from the procurement documents, however, it is timely even if filed more than seven days after the agency's selection decision, provided that it is filed before the contract award or within seven days of the contract award. *Grant Street Group, Inc. v. Department of Community and Economic Development*, 106 A.3d 810, 813-14 (Pa. Cmwlth. 2014); *Omnicare, Inc. v. Department of Public Welfare*, 68 A.3d 20, 25-26 (Pa. Cmwlth. 2013).

Here, UnitedHealthcare did not file a protest within seven days of the date that it knew or should have known of the facts giving rise to its HEDIS and SDB challenges. The HEDIS protest asserted that allowing non-Pennsylvania offerors to submit HEDIS rates from a state of their choosing gave PHW an unfair advantage over UnitedHealthcare because it was "free to submit HEDIS rates for the state in which [its] performance rates were best" and that allowing out-of-state HEDIS rates prevented a valid comparison between offerors. (R. Item 1, Protest at 8-9, R.R. at 12a-13a.) UnitedHealthcare knew in March and April 2016 from the RFP and the addenda that Pennsylvania offerors were required to submit Pennsylvania rates and that non-Pennsylvania offerors could choose which state's HEDIS rates to submit. (R. Item 9 Ex. 1, RFP at 25-26, R.R. at 181a-182a; R. Item

14

9 Ex. 4, Addendum No. 3, R.R. at 224a, 226a; R. Item 9 Ex. 6, Addendum No. 5, R.R. at 239a, 241a-244a.) UnitedHealthcare also knew that a non-Pennsylvania offeror, PHW, had been selected over it on August 30, 2016, more than seven days before it filed any protest.

The SDB protest asserted that delegation of scoring the SDB component to BDISBO was improper because BDISBO lacks the expertise to evaluate whether a subcontractor is competent to perform work under the CHC agreement and that awarding a high SDB score for a greater than 20% SDB commitment was improper because SDBs are "prone to financial and other transition issues which could impact the level of service to … recipients." (R. Item 1, Protest at 11-12, R.R. at 15a-16a.) UnitedHealthcare knew from the RFP that the scoring of the SDB component was delegated to BDISBO and offerors with higher SDB commitments would receive higher scores on the SDB component. (R. Item 9 Ex. 1, RFP at 38-40, R.R. at 194a-196a.) UnitedHealthcare, however, did not file any protest until September 22, 2016.

With respect to the HEDIS protest, UnitedHealthcare argues that its claim is that the Department improperly weighted the HEDIS rates and that it first learned at the September 15, 2016 debriefing that the Department may not have adequately evaluated the state for which PHW submitted HEDIS rates. UnitedHealthcare did not, however, show that it learned any additional information at the debriefing that gave it a basis to assert such a protest ground. The only information provided in the debriefing concerning HEDIS was that UnitedHealthcare's HEDIS rates "showed limited improvement even with the implementation of key initiatives to improve them" and that this was listed as one of 15 weaknesses in UnitedHealthcare's proposal. (R. Item 1 Ex. I, Debriefing Script

15

at 3-6, R.R. at 49a-52a.)  UnitedHealthcare did not base its protest on any inaccuracy in the Department's characterization of its HEDIS rates and it knew its own HEDIS rates when it submitted them in its proposal.

With respect to the SDB protest, UnitedHealthcare argues that it learned in the debriefing that only the certification of the SDB subcontractors was evaluated by BDISBO and not their capability of performing the CHC agreement obligations. UnitedHealthcare, however, admitted in its Protest that it obtained no additional information concerning the SDB scoring at the debriefing.   (R. Item 1, Protest at 3, R.R. at 7a ("Despite a prior request from UnitedHealthcare that personnel from DGS familiar with the SDB scoring be present at the debriefing to explain the scoring and respond to UnitedHealthcare's questions, no such personnel were present and the representatives of DHS present at the debriefing were unable to answer any specific questions regarding SDB scoring").)

Because UnitedHealthcare had notice of the grounds for its HEDIS and SDB protests more than seven days before it filed its protest and learned no additional information supporting these claims at the debriefing, the Director correctly held that these grounds for protest were untimely.  62 Pa. C.S. § 1711.1(b); *CenturyLink Public Communications, Inc.*, 109 A.3d at 829; *JPay, Inc.*, 89 A.3d at 764-65; *Common Sense Adoption Services*, 799 A.2d at 231.[11]

---

[11]  Because the Director correctly rejected these protest grounds as untimely, it is unnecessary to address his rulings on the merits of these claims.  The Court notes, however, that to the extent that either of these protest grounds was based on more than an untimely challenge to the provisions of the RFP, UnitedHealthcare submitted no evidence supporting such claims. UnitedHealthcare did not challenge the correctness of the only information it submitted on the HEDIS evaluation, the Department's description of its HEDIS rates and characterization of them as a weakness.  While UnitedHealthcare asserted in its protest that "comments by DHS representatives at the debriefing meeting with UnitedHealthcare indicated that HEDIS performance rates may have been disproportionately weighted" (R. Item 1, Protest at 9, R.R. at 13a), UnitedHealthcare did not state what these comments were or set forth anything that it contended that the Department said

For the foregoing reasons, we conclude that UnitedHealthcare has not shown any error in the Director's determination. Accordingly, we affirm the denial of UnitedHealthcare's bid protest.

_____
JAMES GARDNER COLINS, Senior Judge

concerning HEDIS beyond the debriefing script. With respect to its SDB claim, it submitted no evidence beyond the terms of the RFP concerning what evaluations BDISBO or the Department did or did not do, and the RFP provided in the Technical Submittal for evaluation by the Department of subcontractors "that will be employed in lieu of staff to help staff and implement the obligations under the [CHC] Agreement." (R. Item 9 Ex. 1, RFP at 14-15, 17, 19, 38, R.R. at 170a-171a, 173a, 175a, 194a.)

17

# IN THE COMMONWEALTH COURT OF PENNSYLVANIA

UnitedHealthcare of Pennsylvania, Inc.,  :
                                 :
                 Petitioner        :
                                 :
                  v.             : No. 1978 C.D. 2016
                                 :
Department of Human Services,    :
                                 :
             Respondent     :

# O R D E R

AND NOW, this 4th day of October, 2017, the final determination of the Director of the Bureau of Administrative Services of the Department of Human Services is AFFIRMED.

_____
JAMES GARDNER COLINS, Senior Judge