IN THE COMMONWEALTH COURT OF PENNSYLVANIA

BSI Construction, LLC,                       :
                 Petitioner              :
                              :
        v.                           :    No. 312 C.D. 2024
                              :    Argued: November 7, 2024
The Philadelphia Regional Port     :
Authority,                                       :
                 Respondent            :

BEFORE:      HONORABLE PATRICIA A. McCULLOUGH, Judge
                     HONORABLE STACY WALLACE, Judge
                     HONORABLE MARY HANNAH LEAVITT, Senior Judge

OPINION
BY SENIOR JUDGE LEAVITT          FILED:  December 13, 2024

BSI Construction, LLC (BSI) petitions for review of an adjudication of the Philadelphia Regional Port Authority (PhilaPort),[1] which denied BSI's protest to PhilaPort's award of a contract to design and build a temperature-controlled warehouse. BSI's proposal was rejected even though it was approximately $13 million lower in price than the winning proposal. BSI contends that PhilaPort erred because it did not apply its evaluation criteria to BSI's proposed bid in a manner consistent with the terms of PhilaPort's request for proposals. For the reasons to follow, we affirm.

## Background

On June 7, 2023, PhilaPort issued a request for proposals (RFP) for the design and construction of a "temperature-controlled warehouse for storage of refrigerated and frozen goods [Project]." Reproduced Record at 1a-2a (R.R. __).

---

[1] The Philadelphia Regional Port Authority, now known as PhilaPort, was established pursuant to Section 4 of the Philadelphia Regional Port Authority Act, Act of July 10, 1989, P.L. 291, 55 P.S. §697.4. It is "a public authority and instrumentality of the Commonwealth." *Id*. As such, it exercises "the powers of the Commonwealth as an agency of the Commonwealth." *Id*.

The RFP required "Substantial Completion" of the Project by March 31, 2025, and "Final Completion" by August 31, 2025. R.R. 3a. The RFP defined "substantially complete" as:

> When the Work on the Contract is sufficiently completed in accordance with the Contract Documents and certified by PhilaPort and the [Design Build Contractor's] Retained Professional so that the Project or specified part(s) of the Project can be used, occupied or operated for its intended use by PhilaPort. In no event shall a Project be certified as substantially complete until at least 90% of the Work has been completed and accepted by PhilaPort and is capable of Beneficial Occupancy, and a certificate of occupancy is issued by L&I.[2]

RFP, Article 1.59, Definitions; R.R. 43a.

The RFP set forth the process for the evaluation of proposals. Specifically, the RFP provided that an evaluation committee would weigh proposals based on three criteria: the Technical Submission, for which bidders could receive up to 500 points; the Price/Cost Submission, for which bidders could receive up to 500 points; and the Diversity and Inclusion/Small Diverse Business Submission, which was graded on a pass/fail basis. RFP 3-2; R.R. 22a. However, "[a]ny proposal not receiving 75% or greater of the maximum available points, or at least 375 points, for the Technical Submission" would be deemed "non-responsible and rejected." RFP 3-3; R.R. 22a. Relevant thereto, the RFP established 34 factors for the Technical Submission evaluation. One factor was "Schedule Duration in calendar days," for which a maximum of 60 points could be awarded. Appendix H,

---

[2] The RFP defined "Labor & Industry" as "[t]he Commonwealth of Pennsylvania's Department of Labor & Industry also referred to as 'L&I.'" RFP, Article 1.35, Definitions; R.R. 41a.

Evaluation Committee Scoring Matrix, 2-5.3(e);[3] R.R. 36a. The proposal with the shortest schedule duration, in calendar days, would receive the maximum number of points. RFP 3-3; R.R. 23a. Subsequently, PhilaPort provided the formula for awarding points for Schedule Duration, and it stated that a proposal with a Substantial Completion Date on or before March 31, 2025, would receive 60 points, and a proposal with a Substantial Completion Date after May 31, 2025, would receive 0 points.

PhilaPort received two proposals: one from BSI and the other from A&E Construction Company (A&E). BSI's master schedule showed a Substantial Completion date of August 11, 2025, or five months after the date specified in the RFP, and a Final Completion date of October 28, 2025, two months after the date specified in the RFP. A&E's master schedule showed a Substantial Completion Date, including the certificate of occupancy, of March 31, 2025, and a Final Completion Date of August 29, 2025. These were the completion dates specified in the RFP. Certified Record 2333a (C.R. __).

Using the 34 technical factors, the evaluation committee assigned BSI's proposal a total of 328.25 points out of a possible 500 points on its Technical Submission. On the Schedule Duration factor, the committee assigned BSI 0 points (out of a possible 60) because its Substantial Completion Date was 133 days after the date specified in the RFP. It assigned 73.25 points out the of remaining 100 points available on other scheduling considerations.[4] On those aspects of the

---

[3] The RFP refers to "2-5.3(f)," but there is no such criterion. As explained in PhilaPort's adjudication, this reference was a typographical error; the reference was to criterion "2-5.3(e)." PhilaPort Adjudication at 2 n.2; Certified Record 2117a (C.R. __).

[4] The other factors considered were:

    a. Submitted detailed [Critical Path Method (CPM)] schedule. CPM schedule includes key interim milestones events (i.e., Issue for Revision, Issue for

Technical Submission not related to scheduling, the evaluation committee assigned BSI 255 points out of the remaining 340 points. Because BSI did not score a minimum of 375 points in the Technical Submission, its proposal was determined "non-responsible" and eliminated from further consideration. PhilaPort did not consider BSI's Price Submission.

On February 20, 2024, PhilaPort sent a "Notice of Intent to Award" to BSI and A&E advising that the Project contract would be awarded to A&E. C.R. 1081a. Thereafter, BSI submitted a request for debriefing. On February 27, 2024, PhilaPort's legal department provided BSI its score on each of the Technical Submission factors.

BSI filed a bid protest, which alleged that (1) BSI was the lowest responsive and responsible bidder; (2) PhilaPort erred in discounting BSI's technical ability and experience; (3) PhilaPort did not apply the standard of review provided in the RFP, thereby mis-scoring the proposals; and (4) PhilaPort misunderstood Pennsylvania law on design-build projects and, thus, skewed the scoring of the two proposals.

---

Permit, completion of foundation, completion of building shell, and start and finish of various construction phases, Substantial Completion date and Final Completion date). Max Points: 25.

b. Schedule Narrative identifies and describes challenges and proposed solutions, critical path, and achievement of milestones. Max Points: 23.

c. Logic, credibility of schedule, and completeness of design elements of schedule. Max Points: 12.

d. Logic, credibility of schedule, and completeness of construction elements of schedule. Max Points: 40.

RFP 2-5.3; R.R. 35a.

On March 8, 2024, the executive director of PhilaPort denied BSI's bid protest.[5] The executive director acknowledged that BSI's proposed price was $84,898,958 and that A&E's proposed price was $97,998,027. However, price accounted for 50% of the total score; the Technical Submission accounted for the remaining 50% consistent with the RFP's process for evaluating proposals. BSI did not earn the minimum number of points needed for its Technical Submission to be considered a responsible bidder because its completion schedule did not conform to the RFP's requirements.

As to the scoring of BSI's technical ability and experience, the executive director explained the RFP required an examination of such factors as the proposer's experience on projects over $50 million; experience on projects similar in scope; and the qualifications of the proposer's management team. The evaluation committee also considered the proposer's technical plan for design and completion of the Project. The executive director noted that BSI's protest did not identify any factor that the evaluation committee failed to consider and did not challenge the committee's scores on any of the technical factors.

As to BSI's challenge to the standard of review, the executive director responded that the evaluation committee applied the RFP's evaluation criteria precisely as stated in the RFP. BSI did not meet its burden of showing that the committee acted arbitrarily or capriciously in exercising its discretion. Likewise, BSI did not identify any errors in PhilaPort's evaluation of the Technical Submission component of BSI's proposal.

---

[5] By letter dated February 29, 2024, the executive director overrode the automatic stay of the contract award, pursuant to Section 1711.1(k) of the Commonwealth Procurement Code (Procurement Code), 62 Pa. C.S. §1711.1(k) (relating to a stay of procurement during pendency of a protest). R.R. 63a.

Finally, the executive director denied BSI's request for additional documents, specifically the scoring of A&E's bid done by the evaluation committee.

BSI petitioned for this Court's review.

## Appeal

On appeal, BSI raises two issues. First, BSI argues that its bid protest was meritorious. Second, BSI argues that it should be awarded the relief it requested in the petition for review, including, *inter alia*, that it be declared the lowest responsible bidder.

## Applicable Legal Principles

As a Commonwealth agency, PhilaPort's purchases are governed by the Procurement Code, 62 Pa. C.S. §§101-2311. Section 512(a) of the Procurement Code requires all Commonwealth agency contracts to "be awarded by competitive sealed bidding except as otherwise provided in section 511 (relating to methods of source selection)." 62 Pa. C.S. §512(a). Section 11(a) of the Philadelphia Regional Port Authority Act, Act of July 10, 1989, P.L. 291, 55 P.S. §697.11(a), also requires that where the cost of a construction project exceeds $10,000, it "shall be done only under contract or contracts . . . with the lowest responsible bidder. . . ."

The goal of competitive bidding is to award a public contract to "the lowest responsible bidder." 62 Pa. C.S. §512(g). The Procurement Code provides that a "responsible bidder" is one "that has submitted a responsive bid and that possesses the capability to fully perform the contract requirements in all respects and the integrity and reliability to assure good faith performance." 62 Pa. C.S. §103. A "responsive bid" is one "which conforms in all material respects to the requirements and criteria in the invitation for bids." *Id*.

6

"Bids shall be evaluated based on the requirements set forth in the invitation for bids[.]" 62 Pa. C.S. §512(e). Where a bidder has been aggrieved by the procurement process or the contract award, it "may protest to the head of the purchasing agency in writing." 62 Pa. C.S. §1711.1(a). Upon its receipt, the head of the agency must "review the protest and any response or reply and may request and review such additional documents or information he deems necessary to render a decision and may, at his sole discretion, conduct a hearing." 62 Pa. C.S. §1711.1(e). Upon completion of the review, the agency head must issue a written determination stating the reasons for the decision on the bid protest. 62 Pa. C.S. §1711.1(f). That determination shall be the final order of the purchasing agency. *Id*.

Where a bid protest is denied, the protestant may appeal to this Court. 62 Pa. C.S. §1711.1(g). The Procurement Code states, in relevant part, as follows:

> Th[is C]ourt shall hear the appeal, without a jury, on the record of determination certified by the purchasing agency. The [C]ourt shall affirm the determination of the purchasing agency unless it finds from the record that *the determination is arbitrary and capricious, an abuse of discretion or is contrary to law*.

62 Pa. C.S. §1711.1(i) (emphasis added). These standards for evaluating whether the purchasing agency's determination should be set aside have been explained in case law precedent.

> To explain "arbitrary and capricious," this Court has stated as follows:
>
> [A]dministrative action is 'arbitrary and capricious where it is unsupportable on any rational basis because there is no evidence upon which the action may be logically based.' *Lynch v. Urban Redevelopment Authority of Pittsburgh*, . . . 496 A.2d 1331, 1335 ([Pa. Cmwlth.] 1985). The United States Supreme Court has summarized the concept of arbitrary and capricious as follows:
>
> > The scope of review under the arbitrary and capricious standard is narrow and a court is not to substitute its

7

judgment for that of the agency. Nevertheless, the agency must examine the relevant data and articulate a satisfactory explanation for its action including a rational connection between the facts found and the choice made. In reviewing that explanation, we must consider whether the decision was based on a consideration of the relevant factors and whether there has been a clear error of judgment. . . . The reviewing court should not attempt itself to make up for [an agency's] deficiencies; we may not supply a reasoned basis for the agency's action that the agency itself has not given.

*Motor Vehicle Manufacturers Association v. State Farm Mutual Automobile Insurance Co.*, 463 U.S. 29, 43 . . . (1983) (citation and internal quotation marks omitted).

*IMC Construction v. The Port of Philadelphia a/k/a PhilaPort* (Pa. Cmwlth., No. 516 C.D. 2020, filed December 4, 2020) (unreported),[6] slip op. at 13-14 (quoting *Cary v. Bureau of Professional & Occupational Affairs, State Board of Medicine*, 153 A.3d 1205, 1210 (Pa. Cmwlth. 2017)). We have explained that an "abuse of discretion occurs if, in reaching a conclusion, the law is overridden or misapplied or the judgment exercised is manifestly unreasonable or is the result of partiality, prejudice, bias, or ill will." *Luzerne County Children & Youth Services v. Department of Human Services*, 203 A.3d 396, 398 (Pa. Cmwlth. 2019).

With this background, we turn to BSI's arguments on appeal.

## I. Certified Record Omissions

Initially, BSI contends that the certified record is incomplete because PhilaPort did not include its scoring of A&E's bid. BSI argues that A&E's scoring had to be considered by the executive director in reviewing BSI's bid protest;

---

[6] An unreported panel decision of this Court, "issued after January 15, 2008," may be cited "for its persuasive value[.]" Section 414(a) of the Commonwealth Court's Internal Operating Procedures, 210 Pa. Code §69.414(a).

therefore, it should have been placed in the certified record. BSI urges this Court to hold that the Procurement Code does not authorize an agency the discretion to pick and choose what to put in the certified record. Rather, it must place the entire record on a procurement into the certified record. This is necessary to protect the taxpayer against waste.

PhilaPort responds that both A&E's and BSI's bid proposals are in the certified record, as are BSI's bid scores. PhilaPort did not include the scoring on A&E's proposal in the certified record because the executive director did not use those scores in his review of BSI's bid protest, which did not allege an error in PhilaPort's evaluation of A&E's proposal. Only documents relevant to the decision to find BSI not to be a responsible bidder were required to be placed into the certified record, and PhilaPort provided those documents.

On the certified record, the Procurement Code states as follows:

The record of determination for review by the court shall consist of the solicitation or award; the contract, if any; the protest; any response or reply; *any additional documents or information considered by the head of the purchasing agency or his designee*; the hearing transcript and exhibits, if any; and the final determination.

62 Pa. C.S. §1711.1(h) (emphasis added). Section 1711.11(h) was explained by this Court in *UnitedHealthcare of Pennsylvania, Inc. v. Department of Human Services*, 172 A.3d 98 (Pa. Cmwlth. 2017).

In *UnitedHealthcare*, the Department of Human Services sought proposals from managed care organizations to implement the Community Health Choices Program, a program to provide physical health and other services to older and disabled Pennsylvanians. UnitedHealthcare was not selected for any zone in

9

Pennsylvania, and it filed a bid protest demanding the production of all other proposals and their scoring. The Department denied the documents.

On appeal, this Court explained that a protestant has the right to review and address only the "documents and information deemed necessary by the head of the purchasing agency or his designee to render a decision." *UnitedHealthcare*, 172 A.3d at 105 (quoting 62 Pa. C.S. §1711.1(c)-(e)). In other words, the documents must be those "on which the agency designee actually relies." *UnitedHealthcare*, 172 A.3d at 105. Since the agency director did not use the documents sought by the bid protestant, it had no right to them.

Further, this Court explained that nothing in the Procurement Code requires that an agency head examine all records relevant to the procurement in reviewing a bid protest. Rather, it provides that "[t]he head of the purchasing agency or his designee shall review the protest and any response or reply and may request and review such additional documents he deems necessary to render a decision." *Id.* (quoting 62 Pa. C.S. §1711.1(e)). Because the documents sought by UnitedHealthcare were not considered by the agency head in reviewing the protest, the documents did not belong in the certified record. *UnitedHealthcare*, 172 A.3d at 105.

PhilaPort points out that the executive director did not need to review the scoring on A&E's bid to decide the merits of BSI's bid protest. The question was whether PhilaPort erred in rejecting BSI's proposal as non-responsible because it did not receive a minimum score of 375 on the Technical Submission. The only documents relevant to that question were BSI's proposal and the Technical Submission scoring matrix for that proposal. A&E's scores on the Technical Submission had no bearing on whether BSI's score was correct.

10

The legislature has set forth what must be placed in the certified record, and *UnitedHealthcare* is dispositive on the meaning of Section 1711.11 of the Procurement Code. An appeal of a bid protest denial does not authorize the protestant to engage in discovery of matters beyond the scope of its protest. Accordingly, PhilaPort properly decided not to include the scoring of A&E's proposal in the certified record to this Court.

## II. BSI's Bid Protest

BSI argues that, as the lowest responsive and responsible bidder, it should have been awarded the contract. A&E's bid was $13 million higher than BSI's proposal, and it could not possibly meet the Substantial Completion Date of March 31, 2025, as it stated in its proposal. The RFP requires a certificate of occupancy from the Philadelphia Licenses and Inspections Department, and it requires the "Final Electrical Certification" before the occupancy permit can be issued. BSI Brief at 7. A&E's master schedule stated that the permanent electrical panels would arrive on site on June 23, 2025, which is 84 days after A&E's stated Substantial Completion Date. The panels are scheduled to be installed on July 14, 2025. In other words, a certificate of occupancy from the Philadelphia Licenses and Inspections Department by March 31, 2025, is impossible. Although A&E projected a permit receipt by March 18, 2025, it promised to begin construction on the Project site on January 8, 2024, two months before it would receive the necessary permits. BSI Brief at 9. This was contrary to the RFP's prohibition against the contractor doing any work in advance of permit receipt.

PhilaPort responds that BSI had to receive a score of 375 on the Technical Submission to be deemed responsible. However, it received a score of 375, which eliminated BSI's proposal as non-responsible. Further, BSI's claim that

11

the evaluation was skewed in favor of A&E lacks any substantiation. BSI has not identified any instance of abuse of discretion, fraud, or favoritism in the scoring, which was established before any proposals were opened. PhilaPort implemented the system as required by the RFP.

As to BSI's stated concern for the taxpayer, PhilaPort states that BSI does not explain how awarding the contract to the only responsible bidder, who would complete the Project in an expeditious and timely fashion, will negatively impact taxpayers. The Estimated Project Amount set forth in the RFP was $60 to $100 million, and A&E's offer falls within that budget projection. Further, A&E's proposal will permit full use and occupancy of the Project in accordance with the schedule in the RFP. A&E proposed a building design superior to BSI, which addressed PhilaPort's concerns about condensation.

Intervenor, A&E, responds that PhilaPort sought proposals on both the design and construction of a temperature-controlled warehouse for storage of refrigerated and frozen goods. This gave prospective bidders significant latitude in their design. A&E's price covered the design and construction of a building quite different from that proposed by BSI. Nothing in the RFP suggests that the lowest bidder should be awarded the contract. To the contrary, the RFP process includes an evaluation of the technical aspects of the bid, which did not permit a simple comparison of the prices of each bid.

Further, BSI's proposal received 328.25 points out of 500 for the Technical Submission. This technical score was based on an evaluation of the work plan; project master schedule; contractor and subcontractor qualifications; and project management team. BSI concedes that its proposal did not meet the Substantial Completion and Final Completion Dates set forth in the RFP.

12

BSI's argument that A&E's completion dates were not feasible was based, in part, on a misreading of the RFP. The RFP specified that for a project to be substantially complete, 90% of the work had to be "completed and accepted by PhilaPort and is capable of Beneficial Occupancy, and a certificate of occupancy is issued by L&I" by March 31, 2025. RFP, Article 1.59; R.R. 43. BSI understood L&I to be the Philadelphia Licenses and Inspections Department and looked to the City's guidelines for issuance of a certificate of occupancy. However, "L&I" is defined in the RFP as the "Commonwealth of Pennsylvania's Department of Labor & Industry." RFP, Article 1.35; R.R. 41a. In any case, A&E's ability to meet the promised completion dates is irrelevant to BSI's protest.

To meet its burden, BSI had to show that PhilaPort's evaluation committee (1) abused its independent judgment; (2) failed to follow a requirement in the RFP; or (3) incorrectly applied a scoring criterion. The executive director explained BSI's score for the Technical Submission, and BSI did not demonstrate any error in the scoring of the Technical Submission. Simply, BSI did not meet its burden of proof.

PhilaPort notified prospective bidders of the formula that would be used to score the Substantial Completion Date. This formula created an opportunity for more points where the proposal offered a Substantial Completion Date in advance of March 31, 2025. The formula stated as follows:

FORMULA
IF EARLY SCHEDULE (PRE 3/31/2025 Substantial Completion Date)
Before 3/31/2025:  60 points
3/31/25:      50 points
4/1/25 – 4/30/25:   33 points

13

> 5/1/25 – 5/31/25:   16 points
>
> After 5/31/25:      0 points
>
> IF NO EARLY SCHEDULE RECEIVED
>
> 3/31/25:      60 points
>
> 4/1/25 – 4/30/25:   40 points
>
> 5/1/25 – 5/31/25:   20 points
>
> *After 5/31/25:      0 points*

C.R. 2107a, 2117a (emphasis added).  BSI proposed a Substantial Completion Date of August 11, 2025, long after the specific date of March 31, 2025.  It received a score of 0 points, which score perfectly conforms to the above-quoted formula.

Of the remaining 100 points available under the scheduling factors in Part 2-5.3 for Technical Submissions, BSI received 73.25 points.  It also received 255 out of 340 points on the other aspects of its Technical Submission *not* related to the Substantial Completion Date.[7]  BSI's total of 328.25 points fell below the 375 points a bidder needed on the Technical Submission.  BSI has not identified any scores on the Technical Submission that are incorrect or unreasonable.

BSI focuses on the language in the RFP stating the proposal "with the shortest schedule duration, in calendar days, will receive the full allotment of points."  RFP 3-3; R.R. 23a.  BSI claimed that it had the shortest schedule duration because it proposed to complete the project in the fewest number of days.  The RFP stated that "[t]he Proposer with the shortest schedule duration, in calendar days, will

---

[7] BSI's other scores on the Technical Submission follow:

      2-5.1   Project Management Team Overview     48.25 points out of 60 points

      2-5.2   Work Plan    121.75 points out of 160 points

      2-5.4.1 Design Build Contractor Qualifications    46 out of 60 points

      2-5.4.2 Design Subcontractor Qualifications  39 out of 60 points

R.R. 35a-36a, 60a-62a.

receive the full allotment of points for Appendix H, 2-5.3, [e], Schedule Duration."
RFP 3-3; R.R. 23a.

The RFP addendum stated that a proposal's schedule duration would be evaluated as part of the technical submission for scoring the "Substantial Completion Date of March 31, 2025[.]" C.R. 2105a, 2017a, 2117a. To receive 60 points for the shortest duration in calendar days, the Substantial Completion Date had to fall on or before March 31, 2025. C.R. 2107a, 2117a. Any bid with a Substantial Completion Date after May 31, 2025, would receive zero points. *Id*. Because BSI's Substantial Completion Date was after May 31, 2025, PhilaPort correctly scored the schedule duration factor at 0 points.

In any case, BSI proposed a schedule duration of 698 calendar days, and A&E proposed a schedule duration of 654 calendar days. A&E's proposal had a Substantial Completion Date of March 31, 2025, and a Final Completion Date of August 29, 2025. In short, BSI did not propose to complete the project in the fewest number of days, and it did not propose to meet either the substantial or final completion dates required in the RFP.

## Conclusion

For the above-stated reasons, we hold that BSI did not establish that PhilaPort's scoring of the Technical Submission portion of BSI's proposal was erroneous, arbitrary, or capricious. Accordingly, we will affirm PhilaPort's adjudication.

_____
MARY HANNAH LEAVITT, President Judge Emerita

IN THE COMMONWEALTH COURT OF PENNSYLVANIA

BSI Construction, LLC,             :
             Petitioner     :
                               :
        v.                  :      No. 312 C.D. 2024
                               :
The Philadelphia Regional Port   :
Authority,                    :
             Respondent   :

## **O R D E R**

AND NOW, this 13th day of December, 2024, the adjudication of the Philadelphia Regional Port Authority, dated March 8, 2024, is AFFIRMED.

_____
MARY HANNAH LEAVITT, President Judge Emerita