**DURKEE LUMBER CO.,
INC., Petitioner**

v.

**DEPARTMENT OF CONSERVATION
AND NATURAL RESOURCES,
Respondent.**

Commonwealth Court of Pennsylvania.

Argued June 5, 2006.
Decided July 13, 2006.
Reargument Denied Aug. 24, 2006.

Michael D. Reed, Harrisburg, for petitioner.

Virginia J. Davison, Asst. Counsel, Harrisburg, for respondent.

BEFORE: COLINS, President Judge, PELLEGRINI, Judge, and McCLOSKEY, Senior Judge.

OPINION BY Judge PELLEGRINI.

Durkee Lumber Co., Inc. (Protestant) appeals a determination of the Secretary of the Department of Conservation and Natural Resources (Purchasing Agency) denying its bid protest and affirming the Purchasing Agency's decision to reject its bid because it had a record of non-compliance in state forest timber sales.

■ Because it had defaulted on contracts that it had entered into with the Commonwealth, Protestant had been placed in the Contractor Responsibility Program which, according to a Governor's Management Directive, would "provide evidence of your non-responsibility."[1] On August 17, 2005, the Purchasing Agency solicited bids for timber sale No. 15–2005BC03 (Pokeweed Timber Sale) located in Susquehannock State Forest, Abbot Township, Potter County, Pennsylvania. Protestant was the highest bidder with a bid price of $467,000, which was $79,232 higher than the next highest bid price. By letter mailed September 2, 2005, the Purchasing Agency notified Protestant that, among other things, it was the highest bidder but not the highest responsible bidder because of its non-performance on previous state forest timber sales.[2]

Protestant then submitted a bid protest[3] asserting that the Pokeweed Timber

1. The Purchasing Agency's November 10, 2004 termination letter to Protestant contained the following statement:

Management Directive 215.9 Amended, as issued by the Governor's Office, authorizes Commonwealth agencies to list contractors who default on Commonwealth contracts under the Contractor Responsibility Program. This statewide listing is maintained as a record of contractors who have defaulted on Commonwealth contracts. Listing on the Contractor Responsibility Program could preclude awarding you a contract for bids submitted on future sales. The [Purchasing Agency] is submitting your name for inclusion on this list. Such listing will not automatically bar you from any future contract award, but will provide evidence of your non-responsibility for purpose of Commonwealth contract award.

(Respondent's Reproduced Certified Record at A58.)

2. "[W]ho is the [highest] responsible bidder ... includes financial responsibility, also integrity, efficiency, industry, experience, promptness, and ability to successfully carry out the particular undertaking." Berryhill v. Dugan, 89 Pa.Cmwlth. 46, 491 A.2d 950, 952 (1985).

3. Sections 1711.1(a) and (c) of the Procurement Code, 62 Pa.C.S. §§ 1711.1(a) and (c), provide:

(a) **Right to protest.**—A bidder ... that is aggrieved in connection with the solicita-

Sale contract should properly have been awarded to it on the grounds that:

1. [Protestant] was the highest responsive[4] and responsible bidder[5] and its bid complied in all material respects with the bid instructions and [Purchasing Agency] regulations concerning timber sales contracts.

2. It is untrue that [Protestant] has "a record of non-compliance on previous State Forest timber sales." To the contrary, with the exception of a prior default completely outside the responsibility or control of [Protestant], [it] has faithfully performed all timber sales contracts awarded to it by the Commonwealth of Pennsylvania. Your [Purchasing Agency] previously wrongfully terminated two timber sale contracts awarded to [Protestant] in 2004. However, [Protestant] filed a timely statement of claim as to the wrongful termination of those contracts and the [Purchasing Agency] has not responded to that claim. [Protestant] intends to file an appropriate action with the Board of Claims as a result of the [Purchasing Agency's] failure to respond to [its] statement of claim previously filed with the [Purchasing Agency] on those contracts.[6] The [Purchasing Agency] had no legitimate basis for the termination of the two contracts.

3. The action of the [Purchasing Agency] in rejecting [Protestant's] bid on the present timber sale contract constitutes an attempt to debar or suspend [it] from consideration for the award of contracts without reasonable notice or reasonable opportunity to be heard and without a basis in substantial evidence, all as required under 62 Pa.C.S. § 531.[7]

4. The rejection of the bid of [Protestant] would deprive the Commonwealth and its taxpayers of the benefit of

---

tion or award of a contract, except as provided in section 521 (relating to cancellation of invitations for bids or requests for proposals), may protest to the head of the purchasing agency in writing.

\* \* \*

(c) **Contents of protest.**—A protest shall state all grounds upon which the protestant asserts the solicitation or award of the contract was improper. The protestant may submit with the protest any documents or information it deems relevant to the protest.

4. Section 103 of the Procurement Code, 62 Pa.C.S. § 103, defines "responsive bid" as:

A bid which conforms in all material respects to the requirements and criteria in the invitation for bids.

5. 62 Pa.C.S. § 103, defines "responsible bidder" as:

A bidder that has submitted a responsive bid and that possesses the capability to fully perform the contract requirements in all respects and the integrity and reliability to assure good faith performance.

6. In the interim, the Purchasing Agency's contracting officer denied Protestant's claim and Protestant filed an action with the Board of Claims that is pending and captioned as *Durkee Lumber Co., Inc. v. Department of Conservation and Natural Resources* (No. 3797, filed September 19, 2005).

7. Section 531(a) of the Procurement Code, 62 Pa.C.S. § 531(a), provides:

After reasonable notice to the person involved and reasonable opportunity for that person to be heard, the head of the purchasing agency, after consultation with the head of the using agency, shall have authority to debar a person from consideration for the award of contracts. The decision to debar shall be based upon substantial evidence that a cause for debarment or suspension under subsection (b) has occurred. In making the decision of whether to debar a person, the head of the purchasing agency shall take into consideration the seriousness of any violation and any mitigating factors. A debarment may be for a period of not more than three years. The head of the purchasing agency may suspend a person from consideration for an award of contracts for a period of up to three months if there is probable cause for debarment.

awarding the timber sales contract to the highest responsible bidder as required under the competitive bidding law.

(Respondent's Reproduced Certified Record at P5.) Protestant included a request for a hearing in its bid protest letter.

On October 18, 2005, the Secretary invited Protestant and the Purchasing Agency to submit documents and information to aid in his determination on the bid protest.[8] Both parties made submissions and were given the opportunity to examine and comment on each other's submissions. The parties neither responded nor objected to any submission made by the other party. The Purchasing Agency's submissions included information on Protestant's involvement in the only four timber sales of record, which stated:

1) In February of 1997, Protestant executed the contract for timber sale 11–94BC01 and started the first phase of work on June 24, 1997, but stopped working on June 30, 1997, due to financial problems. After the Purchasing Agency gave Protestant numerous extensions and expressions of willingness to provide assistance, the Assistant State Forester terminated the contract in July of 1999.

2) Protestant was the only bidder on timber sale 11–2000BC01 with a bid price of $65,300, which had an acceptable minimum bid of $20,607. However, Protestant withdrew its accepted bid and the Purchasing Agency had to reinstate the bidding process.

3) Protestant also bid on timber sales 15–2003BC11 and 15–2003BC01. Because the Purchasing Agency had experience with Protestant not completing sales, it requested that Protestant provide start and finish dates for the haul roads and timbering. These dates were incorporated into the contracts and failure to meet them was cause for termination. Road construction for timber sale 15–2003BC11 was to be completed on August 1, 2004, and for timber sale 15–2003BC01 on September 1, 2004; however, by September 7, 2004, neither road had been started. Furthermore, the Purchasing Agency was notified that Protestant was harassing the supervisory foresters. By notice dated November 10, 2004, the Purchasing Agency terminated both timber sale contracts for failure to comply with the contract terms.

After reviewing the submissions made by both parties, the Secretary found that no material dispute regarding the facts existed to necessitate the holding of a hearing. Based on those submissions, the Secretary determined that Protestant had a record of non-compliance on timber sales; did not qualify as a responsible bidder because it was wanting in the "good faith performance" aspect of that status; and there was no evidence of record that the Purchasing Agency either attempted to bypass or put the procedures for debarment in motion, and denied Protestant's bid protest. Protestant filed this appeal contending that the Secretary was required to provide it with a due process

---

8. Section 1711.1(e) of the Procurement Code, 62 Pa.C.S. § 1711.1(e), provides:

**The head of the purchasing agency or his designee shall review the protest** and any response or reply and may request and review such additional documents or information he deems necessary to render a decision **and may, at his sole discretion, conduct a hearing.** The head of the purchasing agency or his designee shall provide to the protestant and the contracting officer a reasonable opportunity to review and address any additional documents or information deemed necessary by the head of the purchasing agency or his designee to render a decision. (Emphasis added.)

hearing before deciding that its bid was properly rejected.[9]

■■■ Pursuant to 62 Pa.C.S. § 1711.1(e), the Secretary has "sole discretion" to decide whether a hearing is necessary to decide a bid protest. His decision not to hold a hearing can only be reversed if he exercised his discretion with bad faith, fraud, capricious action or abuse of power. *Cardiac Science, Inc. v. Department of General Services*, 808 A.2d 1029 (Pa.Cmwlth.2002).[10] Where there are of record sufficient unchallenged facts necessary to make the required determination, no hearing is required. *Glasgow, Inc. v. Department of Transportation*, 851 A.2d 1014 (Pa.Cmwlth.2004). If, as the Secretary found, there are no disputed material facts necessary to make his determination, then necessarily he has not abused his discretion by refusing to hold a hearing.

■■■ Protestant contends that there are disputed material facts regarding the factual circumstances that led to its purported non-performance of timber sale contracts. It argues that two of the timber sale contracts on which performance issues were alleged are the subject of litigation with the Board of Claims. With respect to the other two sales, one resulted in a mutual agreement to terminate due to Protestant's bank's failure and the other bid never led to an executed contract due to disputes with a local agency regarding the road that would be required to harvest the timber. In other words, Protestant admits that it defaulted on the contracts for which it was the successful bidder but argues that it was not its fault. To prove that it was not its fault, Protestant contends that a hearing was necessary.

However, none of the submissions to the Secretary raised any questions of material fact. Each party was given an opportunity to comment on the other's submissions—whether to disagree with their content, object to their admissibility or relevance, or counter them with other information. When Protestant failed to submit countervailing comments disputing the contents of the documents submitted by the Purchasing Agency, the Secretary, after reviewing the submissions, properly assumed that Protestant did not dispute their factual accuracy and that a hearing was unnecessary. This was especially evident where Protestant never challenged its inclusion on the Contractor Responsibility Program list of contractors who have defaulted.

■■■ Protestant contends that any reliance on its placement in the Contractor Responsibility Program in rejecting its bid was improper. It argues that such reliance would allow an agency to indefinitely reject its bids, a de facto debarment, without providing it with the hearing mandated by Section 531(f) of the Procurement Code, 62 Pa.C.S. § 531(f),[11] prior to any such

---

9. Our scope of review of a purchasing agency's determination in a bid protest is limited to an affirmance unless we find from the record of determination certified by the purchasing agency that the determination is arbitrary and capricious, an abuse of discretion or is contrary to law. Section 1711.1(i) of the Procurement Code, 62 Pa.C.S. § 1711.1(i).

10. While the head of a purchasing agency can determine whether it is necessary to conduct a hearing, even if that decision did not constitute an abuse of discretion, Article V, Section 9 of the Pennsylvania Constitution provides that a party has the right to appeal an administrative determination to court. If the lack of a hearing precludes us from conducting meaningful appellate review, then we must remand so that we can fulfill our constitutional mandate to conduct meaningful appellate review.

11. 62 Pa.C.S. § 531(f) provides:

Suspension or debarment of a person shall automatically prohibit all Commonwealth agencies from awarding any contract to the person or renewing or extending any con-

action. The net effect would be that any purchasing agency could use its own self-serving allegations of a contractor's prior non-performance to determine it was "not responsible." While this would not automatically bar a contractor from being awarded any contract on which it bid, it would have the same net effect.

Placement, however, on the Contractor Responsibility Program listing is not tantamount to a debarment. The Purchasing Agency's November 10, 2004 termination letter for timber sales 15–2003BC11 and 15–2003BC01 provided "such listing [under the Contractor Responsibility Program] is not a de facto debarment and *will not automatically bar you* from any future contract award, but will provide *evidence of your non-responsibility* for purpose of Commonwealth contract award." (Respondent's Reproduced Certified Record at A58.) This letter informed Protestant that inclusion on the listing put it at risk for future contracts. Because it was an administrative determination that affected its rights, Protestant could have appealed that determination but, instead, chose to contest the allegations of non-performance before the Board of Claims.[12] Because an unchallenged inclusion on the Contractor Responsibility Program listing can be used as evidence, it can be used as evidence to determine whether Protestant was a responsible bidder.

■ Finally, Protestant contends that the Secretary's denial of its bid protest without a hearing was an unconstitutional deprivation of a property right because he was not given an opportunity to confront or cross-examine the foresters who made out-of-court written statements of harassment even though the Secretary relied heavily upon them in denying its bid protest. Protestant contends that the Procurement Code provides bidders on Commonwealth contracts with the right to protest an award of contract, and that right includes Protestant's property interest in the prospective Pokeweed Timber Sale contract on which it was bidding.

In *Independent Enterprises Inc. v. Pittsburgh Water and Sewer Authority*, 103 F.3d 1165 (3d Cir.1997), the Third Circuit provided a summary of both federal and Pennsylvania law regarding whether a disappointed bidder had any property rights to sustain a procedural due process claim. In holding that a disappointed bidder cannot maintain such a claim, it stated:

According to the teachings of *Board of Regents of State Colleges v. Roth*, 408 U.S. 564, 92 S.Ct. 2701, 33 L.Ed.2d 548 (1972), ... [a disappointed bidder] may not pursue its procedural due process claims against the [governmental entity] unless "an independent source such as state law" affords it a "legitimate claim of entitlement" to be awarded a municipal contract for which it was the lowest responsible bidder. [The disappointed bidder] relies only on state competitive bidding law as the "independent source"

tract with the person unless the contracting officer determines that there are compelling reasons for the award, renewal or extension and the head of the purchasing agency approves the determination.

12. Protestant's pending action with the Board of Claims is limited to monetary relief; however, that was not the sole means for relief according to Section 1724(d) of the Procurement Code, 62 Pa.C.S. § 1724(d), which provides "[n]othing in this section shall preclude a party from seeking nonmonetary relief in another forum as provided by law." A challenge to Protestant's inclusion on the Contractor Responsibility Program listing should have been brought before the Purchasing Agency, which was not done here.

providing its "legitimate claim of entitlement."

Although Pennsylvania's competitive bidding statutes require that public contracts be awarded to the lowest responsible bidder, ... Pennsylvania courts have long held that such laws are for the benefit of the public only and do not give a low bidder standing to challenge a municipality's failure to award a contract in accordance with the statute. *See, e.g., R.S. Noonan, Inc. v. School Dist. of York,* 400 Pa. 391, 162 A.2d 623, 624–25 (1960) (citing *Commonwealth ex rel. Snyder v. Mitchell,* 82 Pa. 343 (1876)); *J.P. Mascaro Sons, Inc. v. Township of Bristol,* 95 Pa.Cmwlth. 376, 505 A.2d 1071, 1074 (1986); *see also ARA Servs., Inc. v. School District of Phila.,* 590 F.Supp. 622, 629 (E.D.Pa.1984) ...

These Pennsylvania cases demonstrate that one who bids on a public contract has no legitimate expectation of receiving it until the contract is actually awarded. *See Highway Express Lines v. Winter,* 414 Pa. 340, 200 A.2d 300, 303 (1964) ("By their bid [the unsuccessful bidders] proposed to contract for certain work; that bid was not accepted. It was a mere proposal that bound neither party, and as it was never consummated by a contract, the city acquired no right against the [bidders] nor they against the city.") Since [the disappointed bidder's] bids were never accepted, it never acquired an enforceable right with respect to the contract being awarded. It, therefore, has not been deprived of a property interest that warrants procedural due process protection. (Footnotes omitted.)

*Independent Enterprises,* 103 F.3d at 1177–78.[13] Because a disappointed bidder on a government contract has no right to have a contract awarded to it, Protestant's due process rights were not violated by the failure of the Secretary to hold a hearing on whether it was a responsible bidder.

Accordingly, because the Secretary determined, after a thorough review of the collectively compiled unchallenged record, that there was no material dispute regarding the facts, his refusal to grant Protestant's request for a hearing was not an abuse of discretion. The determination of the Secretary is affirmed.

### ORDER

AND NOW, this 13th day of July, 2006, the determination of the Secretary of the Department of Conservation and Natural Resources, dated November 7, 2005, is affirmed.

---

**13.** While *Independent Enterprises* was decided before the General Assembly enacted the Procurement Code in 1998 that allowed an unsuccessful bidder to protest a decision of the contractor regarding acceptance of bids, the Procurement Code did not give the bidder the right to have the contract awarded to it, but only to have the contract awarded to the apparent successful bidder. Moreover, it did not expand an unsuccessful bidder's due process rights but only the right to have a hearing in accordance with the statutory procedure. *See Allied Painting, Inc. v. Delaware River Port Authority of Pennsylvania and New Jersey,* 2004 WL 1631409 (E.D.Pa.2004).