IN THE COMMONWEALTH COURT OF PENNSYLVANIA

Sidelines Tree Service, LLC,     :
          Petitioner     :
                            :
         v.                    :
                            :
Department of Transportation,     :     No. 134 C.D. 2021
         Respondent     :     Argued: September 20, 2021


BEFORE:     HONORABLE P. KEVIN BROBSON, President Judge
                 HONORABLE CHRISTINE FIZZANO CANNON, Judge (P)
                 HONORABLE J. ANDREW CROMPTON, Judge


OPINION NOT REPORTED

MEMORANDUM OPINION
BY JUDGE FIZZANO CANNON          FILED: October 27, 2021


       Sidelines Tree Service, LLC (Sidelines) petitions for review of the February 4, 2021 final determination of the Secretary[1] of Transportation (Secretary) denying Sidelines' protest of the rejection of its bid submission in response to the invitation for bids (request for quotes or RFQ) issued by the Pennsylvania Department of Transportation (PennDOT). Upon review, we affirm.

---

[1] PennDOT states that George W. McAuley, Jr., P.E., the Executive Deputy Secretary of Transportation, served as the designee for the Pennsylvania Secretary of Transportation in the present matter. *See* PennDOT's Br. at 4. Pursuant to Section 1711.1(f) of the Commonwealth Procurement Code (Procurement Code), 62 Pa.C.S. §§ 101-2311, the head of the purchasing agency or his designee shall issue a written determination within 60 days of the receipt of a bid protest. 62 Pa.C.S. § 1711.1(f). This determination shall constitute the final order of the purchasing agency. *Id.* Accordingly, for simplicity, the determination is referred to in this opinion as that of the Secretary.

# I. Background

In August 2020, Sidelines responded to RFQs[2] issued by PennDOT to procure line-clearance tree-trimming services.[3] Sidelines submitted the lowest bids for the counties of Beaver, Bucks, Fayette, Greene, Schuylkill, Washington and Westmoreland. *See* PennDOT Letter, 9/8/20 at 1, Reproduced Record (R.R.) at 14a; Response to Protest, 12/23/20 at 1, R.R. at 83a.[4] Sidelines listed the same equipment and personnel in its bid for each county. *See* Sidelines' Action Plan, 9/11/20 at 1, R.R. at 19a. The RFQs for Beaver, Fayette, Greene, Schuylkill, Washington and Westmoreland Counties contained an express requirement that the apparent low bidder must, "as part of the pre-award equipment inspection," provide documentation for a minimum of two employees verifying that those employees were in compliance with applicable Occupational Safety and Health Administration

---

[2] Pursuant to Section 512(b) of the Procurement Code, "[a]n invitation for bids shall be issued and shall include a procurement description and all contractual terms, whenever practical, and conditions applicable to the procurement." 62 Pa.C.S. § 512(b).

[3] "Line-clearance tree trimmers are workers that have received specialized training so they can work within 10 feet of energized power lines and equipment." U.S. DEP'T OF LABOR: OSHA, *Electric Power Generation, Transmission, and Distribution eTool, Overhead Line Work, Line-Clearance Tree-Trimming Operations*, *available at* https://www.osha.gov/etools/electric-power/overhead-line-work/line-clearance-tree-trimming-operations (last visited Oct. 26, 2021).

[4] Paragraphs 1910.269(a)(2) (Training), 1910.269(a)(3) (Information transfer), 1910.269(b) (Medical services and first aid), 1910.269(c) (Job briefing), 1910.269(g) (Fall protection), 1910.269(k) (Materials handling and storage), 1910.269(p) (Mechanical equipment), and 1910.269(r) (Line-clearance tree trimming) of OSHA Regulation 1910.269 apply to certain line-clearance tree-trimming operations performed by line-clearance tree trimmers who are not qualified employees. *See* 29 C.F.R. § 1910.269(a)(1)(i)(E)(2). These provisions are more stringent than those applicable to qualified employees. *See* U.S. DEP'T OF LABOR: OSHA, Clarification of 1910.269 as applied to line-clearance tree-trimming operations, *available at* https://www.osha.gov/laws-regs/standardinterpretations/1999-04-26 (last visited Oct. 26, 2021). OSHA Regulation 1910.269(a)(2)(iii) provides, among other things, that employees shall be trained and competent in "the skills and techniques necessary to distinguish exposed live parts from other parts of electric equipment," "[t]he recognition of electrical hazards to which the employee may be exposed and the skills and techniques necessary to control or avoid these hazards." 29 C.F.R. § 1910.269(a)(2)(iii)(A), (E).

(OSHA) regulations for crew personnel involved in line-clearance tree trimming. Determination of Non-Responsibility, 12/2/20 at 1-2, R.R. at 5a-6a. The RFQ for Bucks County did not expressly state that such documentation had to be provided as part of the pre-award equipment inspection, but nonetheless stated that the documentation had to be provided by the "apparent" low bidder. *Id.* at 2, R.R. at 6a.

By letter dated September 8, 2020, PennDOT expressed concern that Sidelines would be unable to satisfy its obligations in Engineering District 12-0 (District 12-0) "while also meeting imminent needs in other Engineering Districts, some of which are on the opposite side of the Commonwealth." PennDOT Letter, 9/8/20 at 1, R.R. at 14a. PennDOT requested that Sidelines submit an action plan explaining how it would allocate equipment and personnel to "provid[e] service in all four Engineering District 12-0 counties <u>simultaneously</u>" while addressing Sidelines' "commitments elsewhere in the Commonwealth." *Id.*[5] PennDOT further informed Sidelines that if the action plan submitted was deemed acceptable, Sidelines must then produce for inspection on September 15, 2020 all equipment necessary to perform the work delineated in the four RFQs. *Id.* at 2, R.R. at 15a.

On September 11, 2020, Sidelines submitted an action plan in response to PennDOT's request for clarification, asserting that it possessed the capacity to perform the services outlined in the RFQs for all four District 12-0 counties while also fulfilling contractual obligations in other counties throughout the Commonwealth. Sidelines' Action Plan, 9/11/20 at 1, R.R. at 19a. Sidelines noted that with each RFQ, it submitted a listing of "some of [its] equipment and personnel"

---

[5] It is not ascertainable from the record or PennDOT's appellate brief why PennDOT requested that Sidelines address its ability to provide service in only the four District 12-0 counties. Regardless, Sidelines protested PennDOT's determination of non-responsibility "with regard to all of the RFQs," and the Secretary affirmed PennDOT's determination as to each county. Protest, 12/2/20 at 1, R.R. at 2a; Secretary's Determination, 2/4/21 at 1-10, R.R. at 173a-82a.

3

that met the requirements outlined in the scope of work. *Id.* Sidelines asserted, however, that it was "unreasonable to expect individualized listings with such uncertainty of an award," as it typically provides workers and equipment "according to contracts awarded," and there was "uncertainty [as to] whether Sidelines would be ultimately awarded the contract." *Id.* Further, Sidelines maintained that "[i]t would be a poor business practice to expect employees to be on standby for projects to be awarded and have equipment sitting around waiting to be utilized." *Id.* Sidelines also contended that once notified of its status as the "apparent low bidder" on an RFQ, it then "always submit[ted] a specific listing of equipment that [would] be utilized for that specific county contract, which is demonstrated at the initial inspection." *Id.*

By letter dated September 14, 2020, PennDOT informed Sidelines that it must demonstrate that it possessed sufficient equipment and personnel to perform all work specified in the four RFQs. PennDOT Letter, 9/14/20 at 1, R.R. at 28a. PennDOT further stated that as the apparent low bidder, Sidelines must provide all equipment necessary to meet the requirements of the four solicitations by the September 17, 2020 equipment inspection.[6]

By e-mail dated September 18, 2020, PennDOT instructed Sidelines to provide documentation of Electrical Hazard Awareness Program (EHAP) certification, to show compliance with applicable OSHA requirements, for eight employees (two per county for four of the counties in which Sidelines submitted a bid), and to specify the county in which each employee would work. PennDOT E-mail, 9/18/20 at 1, R.R. at 31a. On September 20, 2020, Sidelines submitted via e-mail to PennDOT certifications for "employees who have their current [EHAP]

---

[6] The date of the equipment inspection evidently changed from September 15, 2020 to September 17, 2020.

4

certificates." *See* Protest, 12/8/20, Exhibit E at 4, R.R. at 31a.[7] Based on the information provided, PennDOT determined that only two of Sidelines' identified employees possessed the EHAP certifications required by the RFQs,[8] and thus, that Sidelines could proceed with the procurement process in only one county. PennDOT E-mail, 9/22/20 at 1, R.R. at 30a. PennDOT further requested that Sidelines provide missing information for six of its identified employees, noting specifically that EHAP certifications for three employees fell within the acceptable date range but failed to indicate the type of electrical hazard course completed; that one employee's EHAP certification card did not bear an issue date; that another employee's EHAP certification card bore an ISN number and bar code, but "ha[d] no certifications listed on the card"; and that a further employee's EHAP certification card bore no issue date and failed to identify certification status. *Id.* By e-mail dated September 24, 2020, Sidelines informed PennDOT that it had included as an attachment "the

---

[7] The record does not contain the EHAP certification documentation submitted by Sidelines to PennDOT as an attachment to its September 20, 2020 e-mail. However, PennDOT requested documentation of EHAP certification for eight employees and, upon receipt of documentation provided by Sidelines, informed the company that only two EHAP certificates were valid while requesting further clarification regarding six purportedly invalid certificates. Thus, Sidelines presumably submitted eight EHAP certificates to PennDOT on September 20, 2020.

[8] Of the portion of the RFQs quoted in PennDOT's December 2, 2020 determination of non-responsibility, only the RFQ for Bucks County specified that "[t]he [a]pparent [s]elected [c]ontractor shall provide documentation of compliance with all relevant OSHA regulations for personnel and equipment [that] may be involved in tree trimming operations," and that such "[d]ocumentation shall be proof of completion of any recognized electrical hazard awareness program." Determination of Non-Responsibility, 12/2/20 at 2, R.R. at 6a. The remaining RFQs did not specifically reference electrical hazard certifications, but rather stated that the apparent low bidder must comply with applicable OSHA regulations, with all but one of the remaining counties specifically identifying OSHA Regulation 1910.269, 29 C.F.R. § 1910.269. *See id.* at 1-2, R.R. at 5a-6a; *see also supra* note 4.

certifications for all of [its] employees,"[9] and identified eight employees available to serve Fayette, Westmoreland, Washington and Greene Counties "on a regular basis," further stating that additional employees were available as "fill-ins." *Id.* at 2, R.R. at 29a.

By letter dated October 9, 2020, PennDOT notified Sidelines that an informal investigation conducted by its legal department following receipt of EHAP certifications proffered by Sidelines revealed that the Tree Care Industry Association (TCIA), an independent entity certifying entities engaged in line-clearance tree trimming, had "little or no record" of the certifications provided by Sidelines[10] and that Sidelines did not maintain current TCIA membership. Response to Protest, 12/23/20, Exhibit A, PennDOT Letter, 10/9/20 at 1, R.R. at 94a. PennDOT noted that Sidelines submitted multiple EHAP certifications as part of the pre-award equipment inspection, which were "purported to be issued by the [TCIA.]" *Id.* Thus, PennDOT stated it was unable to confirm whether Sidelines' employees that were purported to possess the necessary EHAP certification had, in fact, received the EHAP training necessary to ensure compliance with OSHA regulations. *Id.* PennDOT explained that Sidelines' failure to demonstrate that personnel met basic safety requirements was of paramount concern. *Id.* at 1-2, R.R. at 94a-95a. Accordingly, PennDOT requested that Sidelines confirm the validity of the EHAP certificates already submitted by providing cancelled checks or written confirmation from TCIA, and explain any other steps taken to obtain the EHAP certifications

---

[9] Sidelines stated in its September 11, 2020 action plan that it has 52 employees. *See* Sidelines' Action Plan, 9/11/20 at 2, R.R. at 60a. However, the record does not contain the certifications submitted to PennDOT by Sidelines as attachments to its September 24, 2020 e-mail.

[10] PennDOT's reference to unconfirmed EHAP certifications presumably does not include the two it acknowledged as valid. *See* Gipe Attestation, at 4, ¶ B.18., R.R. at 91a (attesting that "the certifications presented were valid as to only two employees" and that "others were expired").

6

missing from TCIA. *Id.* at 2, R.R. at 95a. PennDOT instructed Sidelines to provide "an accurate and comprehensive response" by e-mail on or before October 13, 2020, further cautioning that it would confirm Sidelines' response with TCIA. *Id.*

Notably, on October 13, 2020, Sidelines informed PennDOT via e-mail that it conducted in-house training utilizing TCIA training materials after internal review revealed that *"all or most" EHAP certifications for employees who had performed work on a previous contract for District 12-0 had expired in 2019 and that, as a result, its employees "were working PennDOT contracts without the necessary [EHAP] training*[.]" Response to Protest, 12/23/20, Exhibit B, Sidelines' E-mail & Attachments, 10/13/20 at 1, R.R. at 97a. Attached to the e-mail were Sidelines' employee personnel CPR certifications, receipts from TCIA for training kits and videos, and copies of all tests mailed to TCIA.[11] *Id.* Sidelines assured PennDOT that its employees had been "fully trained" regarding occupational electrical hazards in compliance with applicable OSHA regulations. *Id.*

---

[11] The documents attached to Sidelines' October 13, 2020 e-mail included a receipt for an EHAP training kit from TCIA dated September 16, 2020 (one day before the pre-award equipment inspection). *See* Response to Protest, 12/23/20, Exhibit B, Sidelines' E-mail & Attachments, 10/13/20 at 68, R.R. at 165a. The attachments also included receipts for several purchases for EHAP training kits and other components of EHAP training from TCIA made between 2017 and 2019, as well as documentation indicating that 15 Sidelines employees viewed the video component of EHAP training on September 18, 2020 (the day following the pre-equipment inspection), and that 15 employees completed CPR training, 5 employees completed climbing rescue training, 13 employees completed aerial lift rescue training, 15 employees completed a written exam and 15 employees satisfied the competency checklist pursuant to the EHAP training program on September 21, 2020. *See id.* at 3-66 & 69-74, R.R. at 99a-163a & 166a-71a. TCIA awards certificates of completion through Brightspace, its online learning platform, to candidates who have completed training and provided all necessary documentation. *See* TCIA: EHAP, *available at* https://www.tcia.org/TCIA/Education_Events/Education/TCIA_Credentialing_Programs/Electrical_Hazards_Awareness_Program/Electrical_Hazards_Awareness_Program.aspx (last visited Oct. 26, 2021). EHAP certificates are valid for one year from the date of completion. *See id.* The record does not contain EHAP completion certificates for any Sidelines employees.

By letter dated December 2, 2020, PennDOT notified Sidelines of its determination that Sidelines did not qualify as a responsible bidder[12] regarding the RFQs for Beaver, Bucks, Fayette, Schuylkill, Washington and Westmoreland Counties because Sidelines failed to comply with applicable OSHA regulations.[13] Sidelines' Bid Protest (Protest), 12/8/20, Exhibit A, Determination of Non-Responsibility at 1, R.R. at 5a (citing Section 103 of the Procurement Code, 62 Pa.C.S. § 103). PennDOT concluded Sidelines failed to provide sufficient documentation of OSHA-required training for the RFQs in Fayette, Greene, Washington and Westmoreland Counties, provided PennDOT with expired certificates, and attempted to obtain required certifications only after the pre-award equipment inspection. *Id.* at 2, R.R. at 6a. Further, Sidelines failed to satisfy all the certification requirements in connection with the RFQs for Beaver, Bucks and Schuylkill Counties. *Id.* Therefore, PennDOT informed Sidelines that it would consider the next lowest responsible entity submitting a responsive bid.[14] *Id.*

PennDOT also terminated the purchase order awarded for line-clearance tree-trimming services in Greene County (RFQ 1773) for convenience in

---

[12] Section 103 of the Procurement Code defines a "responsible bidder" as "[a] bidder that has submitted a responsive bid and that possesses the capability to fully perform the contract requirements in all respects and the integrity and reliability to assure good faith performance." 62 Pa.C.S. § 103.

[13] PennDOT informed Sidelines that it would enter its December 2, 2020 letter into the Commonwealth's Contractor Responsibility Program, and that this action "may impact [Sidelines'] ability to do work with the Commonwealth of Pennsylvania in the future." Determination of Non-Responsibility, 12/2/20 at 3, R.R. at 7a. "[A]n unchallenged inclusion on the Contractor Responsibility Program listing can be used as evidence . . . to determine whether [a p]rotestant [is] a responsible bidder." *Durkee Lumber Co. v. Dep't of Cons. & Nat. Res.*, 903 A.2d 593, 598 (Pa. Cmwlth. 2006).

[14] The Procurement Code defines a "responsive bid" as "a bid which conforms in all material respects to the requirements and criteria in the invitation for bids." 62 Pa.C.S. § 103.

8

accordance with paragraph V.30 – 023.1a of Sidelines' contract. *Id.* at 3, R.R. at 7a. PennDOT determined that termination was in the best interest of the Commonwealth, based on information submitted for other procurements and its communications with the entity that is responsible for the training, testing and issuance of certificates for properly trained personnel.[15] *Id.* at 3, R.R. at 7a.

In determining that Sidelines was not a responsible bidder, PennDOT highlighted Sidelines' acknowledgment that its personnel performed work in 2020 while uncertified. *Id.* at 3, R.R. at 7a. PennDOT explained that "the veracity of the information submitted . . . [was] unclear at best and reflect[ed] the inability of [Sidelines] to meet the requirements of the contract relative to personnel, good faith performance and most importantly safety . . . ." *Id.* Thus, PennDOT concluded that it had erroneously awarded this purchase order, as Sidelines failed to demonstrate the requisite level of responsibility to support an award of work. *Id.* at 3, R.R. at 7a.

On December 8, 2020, Sidelines submitted a bid protest to the Secretary of Transportation (Secretary) pursuant to Section 1711.1[16] of the Procurement Code,

---

[15] PennDOT presumably intended to refer to TCIA.

[16] Sidelines stated that it submitted its bid protest pursuant to Section 1711 of the Procurement Code. Protest, 12/8/20 at 1, R.R. at 2a. Sidelines presumably intended to cite Section 1711.1 of the Procurement Code, which governs protests of solicitations or awards. *See* 62 Pa.C.S. § 1711.1. Section 1711.1 of the Procurement Code provides, in relevant part:

> (a) Right to protest.--A bidder or offeror, a prospective bidder or offeror or a prospective contractor that is aggrieved in connection with the solicitation or award of a contract, except as provided in [S]ection 521 (relating to cancellation of invitations for bids or requests for proposals), may protest to the head of the purchasing agency in writing.
>
> (b) Filing of protest.--If the protestant is a bidder or offeror or a prospective contractor, the protest shall be filed with the head of the purchasing agency within seven days after the aggrieved bidder or

62 Pa.C.S. § 1711.1. Protest, 12/8/20 at 1, R.R. at 2a. Sidelines contended that PennDOT's determination of non-responsibility was "clearly erroneous," because Sidelines had "consistently provided line-clearance tree trimmers with appropriate documentation for all contracts it has performed for the Commonwealth of Pennsylvania, and stands ready, willing and able to provide such qualified line-clearance tree trimmers for all of the RFQs in question." *Id.* Sidelines also asserted that the portions of the RFQs cited by PennDOT in its determination of non-responsibility "with regard to all of the RFQs [were] unreasonably vague" and set no fixed deadline for Sidelines to provide the required certifications. *Id.* at 1-2, R.R. at 2a-3a. Regardless, Sidelines maintained that it had either provided all required certifications or was in the process of doing so at the time that PennDOT rendered its final determination. *Id.* at 1, R.R. at 2a. Further, Sidelines contended that providing the required certifications prior to being identified by PennDOT as the apparent low bidder for the RFQs would have been "impractical," as tree trimmers are "characteristically" employed after such a determination (of an apparent low bidder) has been made. *Id.* Moreover, Sidelines maintained that by its past performance as well as by its efforts on the RFQs in question, it had demonstrated that it was fully capable of providing the required certifications and qualified tree

offeror or prospective contractor knew or should have known of the facts giving rise to the protest except that in no event may a protest be filed later than seven days after the date the contract was awarded. . . . Untimely filed protests shall be disregarded by the purchasing agency.

(c) Contents of protest.--A protest shall state all grounds upon which the protestant asserts the solicitation or award of the contract was improper. The protestant may submit with the protest any documents or information it deems relevant to the protest.

62 Pa.C.S. § 1711.1(a)-(c).

trimmers to perform the work contemplated by the RFQs. *Id.* Thus, Sidelines asserted that PennDOT's determinations of non-responsibility were erroneous and should be rescinded. *Id.* Sidelines further requested that PennDOT hold a hearing regarding the "allegation" of non-responsibility and allow Sidelines to provide evidence to the Secretary or her designee regarding Sidelines' responsibility and professional qualifications to perform the work contemplated by the RFQs. *Id.* at 2, R.R. at 3a.

On December 23, 2020, PennDOT responded to Sidelines' Protest, contending that Sidelines failed to provide adequate evidence of the requisite certifications and otherwise failed to demonstrate that it constituted a responsible bidder under Section 103 of the Procurement Code, 62 Pa.C.S. § 103. Response to Protest, 12/23/20 at 3-5, R.R. at 83a-85a. Further, PennDOT asserted that Sidelines' Protest was untimely, as it should have been filed within seven days of PennDOT's October 9, 2020 letter questioning Sidelines' compliance with certification requirements. *Id.* at 5-6, R.R. at 85a-86a (citing Section 1711.1(b) of the Procurement Code, 62 Pa.C.S. § 1711.1(b)). PennDOT also communicated to Sidelines its decision to cancel the RFQ for Schuylkill County due to budgetary constraints. *Id.* at 6, R.R. at 86a. PennDOT, therefore, asserted that the Protest was moot or precluded by law with respect to the cancellation of the procurement associated with the Schuylkill County RFQ and the cancellation of the contract award in connection with the Greene County RFQ. *Id.* at 6-7 R.R. at 86a-87a (citing

11

Section 1712.1 of the Procurement Code, 62 Pa.C.S. § 1712.1).[17]  Sidelines did not file a reply to PennDOT's Response.  Final Determination at 2, R.R. at 174a.[18]

William G. Gipe (Gipe), Designated Senior Manager and Division Chief of the Materials and Services Management Division of PennDOT's Bureau of Office Services, who served as contracting officer[19] for purposes of Section 1711.1 of the Procurement Code, 62 Pa.C.S. § 1711.1, and as custodian of records pertaining to the procurement at issue, attested in support of PennDOT as follows.  Gipe Attestation at 1-2, ¶ B.1., R.R. at 88a-89a.  Sidelines is qualified to perform tree trimming and stump removal under the statewide Invitation to Qualify, numbered 4400014261 (ITQ), administered by the Department of General Services.  *Id.* at 2, ¶ B.2., R.R. at 89a.[20]  When PennDOT personnel seek to procure tree trimming and stump removal services under an ITQ, they issue an RFQ from qualified ITQ vendors delineating the relevant requirements for PennDOT's procurement needs.  *Id.*, ¶¶ B.4., B.5., R.R. at 89a.  The lowest responsive quote from a responsible

---

[17] Section 1712.1(a) of the Procurement Code provides that "[a] contractor may file a claim with the contracting officer in writing for controversies arising from a contract entered into by the Commonwealth."  62 Pa.C.S. § 1712.1(a).  Although the record does not indicate when PennDOT awarded Sidelines the Greene County contract, it presumably occurred sometime after September 8, 2020, the date on which PennDOT posited that Sidelines appeared to have the capacity to provide services in only one county and acknowledged Sidelines' preference of Fayette County.  *See* PennDOT Letter, 9/8/20 at 1, R.R. at 14a.

[18] A protestant may file a reply to the response submitted by the contracting officer for the purchasing agency within ten days of the date of the response.  Section 1711.1(d) of the Procurement Code, 62 Pa.C.S. § 1711.1(d).

[19] Section 1711.1(d) provides that "[w]ithin 15 days of receipt of a protest, the contracting officer may submit to the head of the purchasing agency and the protestant a response to the protest, including any documents or information he deems relevant to the protest."  62 Pa.C.S. § 1711.1(d).

[20] The statement of work and standard terms and conditions for the ITQ are available at the following website:  https://www.dgs.pa.gov/Materials-Services-Procurement/Procurement-Resources/Pages/ITQ-Documents.aspx (last visited Oct. 26, 2021). *See* Gipe Attestation at 2, ¶ B.2., R.R. at 89a.

12

vendor is awarded a purchase order for the RFQ. *Id.*, ¶ B.6., R.R. at 89a. A prospective vendor also submits a list of equipment to be used on the work. *Id.*, ¶ B.8., R.R. at 89a. During the pre-award equipment and personnel inspection, the prospective vendor provides details regarding the employees that will perform the requested work. *Id.* Prospective vendors must also meet the requirements of OSHA Regulation 1910.269, which require employers to certify through TCIA that employees have received the requisite training as to the hazards of tree trimming near power lines. *Id.* at 2, ¶ B.9., R.R. at 90a.[21]

Gipe continued by explaining that after rejecting Sidelines' quote, PennDOT had already begun considering the second lowest bidder by the time Sidelines filed its Protest. *Id.* at 3, ¶ B.14., R.R. at 90a. Pages one and two of Exhibit A to Sidelines' Protest[22] contain relevant excerpts of the RFQs at issue, which expressly require presentation of line-clearance tree trimming certifications[23] at pre-award equipment and personnel inspections. *Id.* at 3, ¶ B.15., R.R. at 90a. According to Gipe, Sidelines failed to present the requisite certifications at the pre-award equipment inspections for Fayette, Washington and Westmoreland Counties, as the certifications were expired as to all but two employees. *Id.* at 3-4, ¶¶ B.17.-

---

[21] Gipe further attested that additional information regarding TCIA's EHAP training program is available on the TCIA website, and the Secretary took judicial notice of the same. *See* Gipe Attestation at 3, ¶ B.11., R.R. at 90a; Final Determination at 6 n.3, R.R. at 178a. The TCIA website indicates that certification through TCIA's EHAP training program may be used to meet the requirements of OSHA Regulation 1910.269. PennDOT also acknowledged in separate correspondence that it deemed valid EHAP certifications compliant with applicable OSHA requirements. *See* PennDOT Letter, 10-9-20 at 1, R.R. at 94a.

[22] Exhibit A to Sidelines' Protest is PennDOT's determination of non-responsibility. *See* Determination of Non-Responsibility, Exhibit A, at 1-3, R.R. at 5a-7a.

[23] PennDOT noted in its Response that Sidelines referred to EHAP certifications as "line-clearance tree trimming" certifications in its Protest and that, for the sake of consistency, it would adopt the same terminology. *See* Response to Protest, 12/23/20 at 3, R.R. at 83a.

B.18., R.R. at 90a-91a. Further, the Bucks County RFQ implicitly required possession of the requisite certifications during the pre-award equipment inspections. *Id.* at 3, ¶ B.16., R.R. at 90a. Following the pre-award equipment inspection, counsel for PennDOT contacted TCIA and discovered that TCIA possessed no record of the expired certifications, that the expired certifications did not comport with TCIA requirements and that PennDOT continued to investigate whether the certifications had been valid even prior to their expiration. *Id.* at 4, ¶ B.19., R.R. at 91a. Sidelines conceded that its employees previously performed work without possessing the requisite line-clearance tree trimming certifications, thereby demonstrating a lack of integrity and reliability, and the inability to assure good faith performance of contractual requirements. *Id.* at 4, ¶ B.20., R.R. at 91a. Gipe reasoned that in light of the requirement in the RFQs that bidders provide at least two certified employees per crew, Sidelines' purchase of ten kits for the training and testing of ten employees under the line-clearance tree trimming training program could not simultaneously satisfy minimum certification requirements for the seven RFQs for which Sidelines submitted the apparent "low quote," as each of the seven RFQs would require a minimum of at least two certified employees. *Id.* at 4, ¶¶ B.21.-B.22., R.R. at 91a. Further, Gipe attested that he was "personally aware of a host of examples where Sidelines dropped required worker's [sic] compensation and commercial general liability insurance coverage during its performance of work in 2019 and 2020[.]" *Id.* at 4, ¶ B.23., R.R. at 91a. Additionally, Sidelines failed to satisfy contractual requirements throughout 2019 and 2020 by failing on certain occasions to timely provide personnel and services to meet PennDOT's needs. *Id.* at 4, ¶ 24, R.R. at 91a.

14

On February 4, 2021, the Secretary issued a determination denying Sidelines' Protest. Secretary's Determination, 2/4/21 at 1, R.R. at 173a. The Secretary determined that Sidelines' Protest was timely, but nevertheless lacked merit, as Sidelines failed to meet its burden to prove that PennDOT either committed error, acted arbitrarily or capriciously, or abused its discretion in awarding the contract to the second lowest responsible bidder. *Id.* at 10, R.R. at 182a.[24]

Specifically, the Secretary found "troubling" Sidelines' declaration in its Protest that it had consistently provided fully certified line-clearance tree trimmers for all contracts performed for the Commonwealth of Pennsylvania, as that assertion directly contravened Sidelines' concession in its October 13, 2020 e-mail that certain of its employees performed work on a previous contract for District 12-0 without the requisite EHAP certifications. *Id.* at 8-9, R.R. at 180a-81a. Additionally, the Secretary determined that the portion of the Protest challenging the determination of non-responsibility in connection with Schuylkill County was precluded by law or moot due to cancellation of the procurement. *Id.* at 9, R.R. at 181a. Moreover, the Secretary determined that Sidelines improperly attempted to challenge cancellation of the Greene County contract by means of Section 1711.1 of the Procurement Code, rather than Section 1712.1. *Id.* at 9-10, R.R. at 181a-82a.

---

[24] Section 1711.1(k) of the Procurement Code provides:

> In the event a protest is filed timely under this section and until the time has elapsed for the protestant to file an appeal with Commonwealth Court, the purchasing agency shall not proceed further with the solicitation or with the award of the contract unless and until the head of the purchasing agency, after consultation with the head of the using agency, makes a written determination that the protest is clearly without merit or that award of the contract without delay is necessary to protect substantial interests of the Commonwealth.

62 Pa.C.S. § 1711.1(k).

## II. Issues on Appeal

On appeal,[25] Sidelines requests that this Court reverse the Secretary's final determination on the basis that it lacks substantial evidentiary support. Sidelines' Br. at 9-10. Sidelines argues that in its September 11, 2020 response, it "fully committed to provide the required staffing to each project, including the minimum two certified employees to work in the vicinity of electrical lines." *Id.* at 9. Sidelines asserts that it "indicated that it was committed to providing additional certified employees if the contracts were awarded, since that is the industry standard method for compliance." *Id.* at 9. Sidelines maintains that "PennDOT's disregard of Sidelines' September 11, 2020 response is based upon a fallacious hypothetical situation where all work under the various RFQs is being performed contemporaneously," when "there is no way to prove that such a hypothetical situation would have occurred." *Id.* at 9. Sidelines asserts that it would have moved its crews to the various counties where the RFQs were in place on an "as needed" basis to perform all of the work contemplated, and that PennDOT "offer[ed] no proof that such a logistical approach by Sidelines would not have worked." *Id.* at 10. Further, Sidelines argues that PennDOT "unreasonably relied upon a candid

---

[25] This Court decides appeals from final determinations concerning bid protests submitted pursuant to Section 1711.1 of the Procurement Code, 62 Pa.C.S. § 1711.1, on the record certified by the purchasing agency. *See Bureau Veritas N. Am., Inc. v. Dep't of Transp.*, 127 A.3d 871, 887 n.1 (Pa. Cmwlth. 2015); *see also* 62 Pa.C.S. § 1711.1(i). "The Court shall affirm the determination of the purchasing agency unless it finds from the record that the determination is arbitrary and capricious, an abuse of discretion or is contrary to law." 62 Pa.C.S. § 1711.1(i). "[Section 1711.1] shall be the exclusive procedure for protesting a solicitation or award of a contract by a bidder[.]" 62 Pa.C.S. § 1711.1(l). "The provisions of 2 Pa.C.S. (relating to administrative law and procedure) shall not apply to this section." *Id.* "An abuse of discretion is not merely an error in judgment"; rather, "[a]n abuse of discretion occurs if, in reaching a conclusion, the law is overridden or misapplied or judgment exercised is manifestly unreasonable or is the result of partiality, prejudice, bias, or ill will." *Henderson v. Unemployment Comp. Bd. of Rev.*, 77 A.3d 699, 713 (Pa. Cmwlth. 2013). An abuse of discretion also occurs where findings of fact are not supported by substantial evidence. *Pa. Bankers Ass'n v. Pa. Dep't of Banking*, 981 A.2d 975, 985 (Pa. Cmwlth. 2009) (citing *Hafner v. Zoning Hearing Bd. of Allen Twp.*, 974 A.2d 1204 (Pa. Cmwlth. 2009)).

16

statement" it made concerning the discovery that it previously provided workers with expired certification for contracts with PennDOT, as "[t]hat statement was made as a basis for Sidelines' renewed commitment to obtain valid certifications for as many employees as would be necessary to perform the work under the contemplated RFQs." *Id.* at 10. Sidelines contends that PennDOT "weaponized that disclosure into a basis for doubting Sidelines' credibility going forward, a leap in correlation that does not correspond with logic and is not supported by any proof whatsoever." *Id.* at 10. Finally, Sidelines posits that the Secretary should have held an evidentiary hearing before issuing a final determination.

PennDOT counters that this Court should affirm the final determination of the Secretary, because uncontroverted evidence establishes that Sidelines is not a responsible contractor. PennDOT's Br. at 5-8. PennDOT further maintains that firsthand, personal knowledge of Sidelines' inadequate performance throughout 2019 and 2020, coupled with Sidelines' admission to performing work without first obtaining the certifications required by law, supports the Secretary's denial of Sidelines' Protest. *Id.* at 11-12 (citing *Kierski v. Twp. of Robinson*, 810 A.2d 196, 199 (Pa. Cmwlth. 2002)). PennDOT also cites Gipes' attestation that TCIA possessed no record of the expired EHAP certifications supplied by Sidelines; PennDOT suggests that the EHAP certifications may never have been valid. *See id.* at 9 n.2 (citing Gipe Attestation at 4, ¶ B.19., R.R. at 91a).

## III. Discussion

"[L]aws requiring the competitive bidding of public contracts serve 'the purpose of inviting competition, to guard against favoritism, improvidence, extravagance, fraud, and corruption in the awarding of municipal contract[s] . . . .'"

17

*Berryhill v. Dugan*, 491 A.2d 950, 952 (Pa. Cmwlth. 1985) (quoting *Conduit and Found. Corp. v. City of Phila.*, 401 A.2d 376, 379 (Pa. Cmwlth. 1979)). "In Pennsylvania, as in most states, the 'best bidder' has no right to have the contract awarded to it because the 'lowest responsible bidder' provisions are not there to give the bidder any rights but to protect taxpayers[.]" *Nat'l Constr. Servs., Inc. v. Phila. Reg'l Port Auth.*, 789 A.2d 306, 308-09 ("The submission of the bid is, in fact, the offer which the contracting agency is free to accept or reject.").

Section 512(g) of the Procurement Code, which governs competitive sealed bidding, provides that the purchasing agency shall award a contract "to the lowest responsible bidder[.]" 62 Pa.C.S. § 512(g). Section 103 of the Procurement Code defines a "responsible bidder" as one "that has submitted a responsive bid and that possesses the capability to fully perform the contract requirements in all respects and the integrity and reliability to assure good faith performance." 62 Pa.C.S. § 103. A "responsive bid" is one that "conforms in all material respects to the requirements and criteria in the [RFQ]." *Id.* "Variances from instructions and specifications in public works bidding are to be discouraged and, at a minimum, implicate the government's discretionary authority to reject a non-compliant bid." *Cardiac Sci., Inc. v. Dep't of Gen. Servs.*, 808 A.2d 1029, 1033 (Pa. Cmwlth. 2002) (quoting *Gaeta v. Ridley Sch. Dist.*, 788 A.2d 363, 369 (Pa. 2002)). Thus, "[i]n making a determination as to the lowest responsible bidder, each bid must be carefully examined to ascertain its responsiveness to the requirements of the [RFQ]." *Id.*

Here, the RFQs required the apparent low bidder to provide documentation of compliance with applicable OSHA regulations for a minimum of

two employees per county as part of the pre-award equipment inspection.[26]  *See* Determination of Non-Responsibility at 1-2, R.R. at 5a-6a.  PennDOT acknowledges that Sidelines provided valid certifications for two employees as part of the pre-award equipment inspection.[27]  *See* Gipe Attestation, at 4, ¶ B.18., R.R. at 91a.

Nevertheless, regardless of the particular requirements of an RFQ, a purchasing agency's determination of the lowest responsible bidder "includes financial responsibility, [] integrity, efficiency, industry, experience, promptness, and ability to successfully carry out the particular undertaking." *Durkee Lumber Co. v. Dep't of Cons. & Nat. Res.*, 903 A.2d 593, 594 n.2 (Pa. Cmwlth. 2006) (quoting *Berryhill*, 491 A.2d at 952 (emphasis omitted)).  Here, substantial evidence supports the Secretary's determination that Sidelines' history of poor performance precluded status as a responsible bidder.  *See* Final Determination, 2/4/21 at 8-9, R.R. at 180a-81a.  Sidelines previously performed work for PennDOT without ensuring its employees maintained the requisite EHAP certifications.  Response to Protest,

---

[26] As set forth above, the RFQ for Bucks County did not state that the certifications had to be presented specifically in the pre-award inspections, but it did require that "[t]he [a]*pparent* [s]elected [c]ontractor . . . provide documentation of compliance with all relevant OSHA regulations for personnel and equipment [that] may be involved in tree trimming operations," thus indicating that the obligation was a prerequisite for a successful bid.  *See* Determination of Non-Responsibility, 12/2/20 at 2, R.R. at 6a (emphasis added).  We note that PennDOT afforded Sidelines the opportunity following the September 17, 2020 pre-award equipment inspection to provide proof of the certifications required by the RFQs, and that PennDOT did not render its determination of non-responsibility until December 2, 2020.  *See* Response to Protest, 12/23/20, Exhibit A, PennDOT Letter, 10/9/20 at 1-2, R.R. at 94a-95a; PennDOT E-mail, 9/18/20 at 1, R.R. at 31a.

[27] Although the September 17, 2021 pre-award equipment inspection evidently pertained to just three counties (Fayette, Washington and Westmoreland), and a pre-award equipment inspection for Greene County presumably took place on or before that date, Sidelines protested PennDOT's determination of non-responsibility as to all seven counties for which it submitted bids (even though PennDOT cancelled the Schuylkill County RFQ and terminated the Greene County purchase order).  The Secretary affirmed PennDOT's determination of non-responsibility in its entirety and we, in turn, affirm, the Secretary's final determination.

12/23/20, Exhibit B, Sidelines' E-mail & Attachments, 10/13/20 at 1, R.R. at 97a. Sidelines failed to meet contractual requirements in numerous prior instances by failing to maintain required workers' compensation and commercial general liability insurance coverage during its performance of work in 2019 and 2020. *Id.* at 4, ¶ B.23., R.R. at 91a. Sidelines also failed to timely provide personnel and services to meet PennDOT's needs on several occasions during this same time period. *Id.* at 4, ¶ B.24., R.R. at 91a. Further, PennDOT's informal investigation revealed that TCIA did not have record of most of the certifications held out by Sidelines as valid and that Sidelines did not maintain current TCIA membership. *See Berryhill*, 491 A.2d at 952 (quoting *Kratz v. Allentown*, 155 A. 116, 117 (Pa. 1931) (emphasis omitted) ("Where a full investigation discloses a substantial reason which appeals to the sound discretion of the [purchasing agency, it] may award a contract to one not in dollars the lowest bidder.")); *see also* Section 103 of the Procurement Code, 62 Pa.C.S. § 103 (defining a "responsible bidder," in relevant part, as "[a] bidder that has . . . the integrity and reliability to assure good faith performance").

Sidelines also contends PennDOT failed to prove that the proposed "logistical approach" of dispersing employees throughout the Commonwealth on an "as needed" basis was not feasible.[28] Sidelines' Br. at 10. First, this argument misallocates the burden in a bid protest.

> [Public] officers are clothed with the responsibility of originating and executing plans for the public good; the presumption is that their acts are on such considerations and their decisions reached in a legal way after an

---

[28] We note that Sidelines was not prohibited from identifying the same two employees in more than one bid. However, PennDOT acted reasonably in requesting assurance that Sidelines could fully perform all contract requirements for the bid-upon RFQs. *See* Section 103 of the Procurement Code, 62 Pa.C.S. § 103 (defining a "responsible bidder," in relevant part, as one "that possesses the capability to fully perform the contract requirements in all respects and the integrity and reliability to assure good faith performance").

investigation. *When their actions are challenged, the burden of showing to the contrary rests on those asserting it, and it is a heavy burden*; courts can and will interfere only when it is made apparent this discretion has been abused.

*Reading Blue Mountain & N. R.R. v. Seda-Cog Joint Rail Auth.*, 235 A.3d 438, 459 (Pa. Cmwlth. 2020), *appeal denied*, 249 A.3d 244 (Pa. 2021) (emphasis added) (quoting *A. Pickett Constr., Inc. v. Luzerne Cnty. Convention Ctr. Auth.*, 738 A.2d 20, 24 (Pa. Cmwlth. 1999)); *see also Stanton-Negley Drug Co. v. Dep't of Pub. Welfare*, 943 A.2d 377, 387 (Pa. Cmwlth. 2008) (prospective bidder initiating a bid protest pursuant to Section 1711.1 of the Procurement Code, 62 Pa.C.S. § 1711.1, bore the burden of demonstrating that the purchasing agency abused its discretion). Moreover, the Secretary did not improperly "weaponize" Sidelines' acknowledgment in its October 13, 2020 e-mail that "all or most" EHAP certifications for employees who had performed work on a contract for District 12-0 had expired in 2019 and that, as a result, its employees had performed work without the necessary training. Rather, this e-mail was appropriately taken into account, and this Court may, in turn, consider it as record evidence. *See* 62 Pa.C.S. § 1711.1(h) ("The record of determination for review by the court shall consist of the solicitation or award; the contract, if any; the protest; any response or reply; *any additional documents or information considered by the head of the purchasing agency or his designee*; the hearing transcript and exhibits, if any; and the final determination.") (emphasis added). A purchasing agency's firsthand knowledge of a protestant's poor performance on a prior contract may serve as evidence that the protestant is not the lowest responsible bidder. *See Kierski*, 810 A.2d at 199 (township did not abuse its discretion in determining that the protestant was not the lowest responsible bidder, where township officials credibly testified about their own personal

21

knowledge of protestant's inadequate performance under a prior contract; it was "reasonable to conclude from such evidence that [protestant did] *not* have the ability to successfully carry out the requirements of the . . . contract").

Additionally, Sidelines contends the Secretary abused her discretion by refusing to hold an evidentiary hearing. Sidelines' Br. at 11. Sidelines asserts that the Secretary "doubted the credibility of [its September 11, 2020 action plan] and determined on that basis that Sidelines was not a responsible offeror." *Id.* Sidelines argues a hearing would have allowed it to support its assertion that it could satisfy the requirements contained in the RFQs. *Id.* Further, Sidelines maintains that holding a hearing would have afforded it the opportunity to cross-examine PennDOT personnel as to the reasons for their determination and to present evidence of its "logistic preparation for performance of the contracts." *Id.* We disagree. Under Section 1711.1(e) of the Procurement Code, the head of the purchasing agency or his designee has "sole discretion" to decide whether a hearing is necessary on a bid protest. *Durkee*, 903 A.2d at 597 (citing 62 Pa.C.S. §1711.1(e)). That decision will not be reversed in the absence of bad faith, fraud, capricious action or abuse of power. *Id.* Where the record contains sufficient unchallenged facts to support the determination, no hearing is required. *Id.* (citing *Glasgow, Inc. v. Pa. Dep't of Transp.*, 851 A.2d 1014 (Pa. Cmwlth. 2004)).

Here, Sidelines' assertions fail to implicate any conflict or dispute of material facts. PennDOT conceded through the Gipe attestation and at argument that Sidelines provided at least two certified employees. Sidelines' main dispute pertains to construction of the terms of the RFQs (*i.e.*, whether the RFQs contained a simultaneous performance requirement), and does not implicate a dispute of material fact. *See* Gipe Attestation at 4, ¶ B.18., R.R. at 91a. Thus, the Secretary

22

did not abuse her discretion in declining to hold a hearing. *See Durkee*, 903 A.2d at 597; *UnitedHealthcare of Pa., Inc. v. Dep't of Hum. Servs.*, 172 A.3d 98 (Pa. Cmwlth. 2017) (decision not to grant a hearing to managed-care organization that filed a bid protest over Department of Human Services' rejection of bid proposal was not an abuse of discretion where there was no showing that the facts necessary to decide the protest were in dispute and the portion of the record cited by protestant concerned claims of lack of evidence supporting factual assertions by the Department, not conflicts between evidence submitted by protestant and the Department or the successful offerors).

For the preceding reasons, the Secretary's final determination was not arbitrary, capricious, an abuse of discretion, or contrary to law. Accordingly, we affirm the Secretary's February 4, 2021 final determination.


_____
CHRISTINE FIZZANO CANNON, Judge

IN THE COMMONWEALTH COURT OF PENNSYLVANIA

Sidelines Tree Service, LLC,         :
                 Petitioner      :
                                :
          v.                  :
                                :
Department of Transportation,   :   No. 134 C.D. 2021
                Respondent   :

## O R D E R

AND NOW, this 27th day of October, 2021, the February 4, 2021 final determination of the Secretary of Transportation for the Pennsylvania Department of Transportation is AFFIRMED.

_____
CHRISTINE FIZZANO CANNON, Judge